# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MS KING, Minor.

UNPUBLISHED
March 24, 2016

No. 327257
Wayne Circuit Court
Family Division
LC No. 13-514175-NA

Before: TALBOT, C.J., and WILDER and BECKERING, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to the minor child pursuant to MCL 712A.19b(3)(c)(*i*) (failure to rectify conditions of adjudication), (c)(*ii*) (other conditions exist that cause the child to come within the jurisdiction of the court), (g) (failure to provide proper care and custody) and (j) (child will be harmed if returned to parent). We affirm.

The minor child was removed from respondent's custody shortly after his birth. At the time of the minor child's removal from respondent's custody, respondent was held at Walter P. Reuther Psychiatric Hospital, and the minor child lived with a maternal relative. After a case service plan for respondent was established in September 2013, the trial court held several dispositional review hearings over the course of 18 months to determine respondent's compliance with her treatment plan. After respondent failed to comply with the requirements of her treatment plan relating to suitable housing, a legal income, parenting classes and a psychiatric and psychological evaluation, the trial court terminated respondent's parental rights to the minor child.

On appeal, respondent first contends that petitioner did not do enough to allow for her reunification with her child because it did not properly accommodate her mental health condition. Respondent alleges this failure resulted in the deprivation of her constitutional right to raise her child. We disagree.

Parents have a fundamental constitutional right "to make decisions concerning the care, custody and control of their children." *In re Sanders*, 495 Mich 394, 409; 852 NW2d 524 (2014) (citation omitted). The Michigan Supreme Court has described this interest as "an element of liberty protected by due process." *In re JK*, 468 Mich 202, 210; 661 NW2d 216 (2003). However, this valued right is not absolute, and the state has "a legitimate interest in protecting the " 'moral, emotional, mental and physical welfare of [children]' and in some circumstances, 'neglectful parents may be separated from their children.' " *In re Sanders*, 495 Mich at 409-410,

-1-

quoting *Stanley v Illinois*, 405 US 645, 652; 92 S Ct 1208; 31 L Ed 2d 551 (1972). This Court has recognized that the "procedural safeguards" in child protective proceedings act to protect individuals from "the risk of erroneous deprivation" of the liberty interest in raising their children. *In re Pap*, 247 Mich App 148, 153; 640 NW2d 880 (2001). Put another way, to protect a parent's liberty interest in raising his or her child, our Supreme Court has recognized that "all parents are "constitutionally entitled to a hearing on their fitness before their children are removed from their custody." *In re Sanders*, 495 Mich at 412, quoting *Stanley*, 405 US at 658.

This Court, in the case of *In re Terry*, 240 Mich App at 25, recognized that the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq.*, requires that during child protective proceedings, reunification services and programs comply with the ADA. This Court further observed that the requirement in MCL 712A.18f(4), that the court consider "whether reasonable efforts have been made . . . to rectify the conditions that caused the child's removal from his or her home,[,]" was congruent with the ADA's mandate that an individual's disabilities be reasonably accommodated. *In re Terry*, 240 Mich App at 25. Further, the *In re Terry* Court made it clear that an individual must assert a failure to accommodate disabilities in a timely fashion, specifically, when a service plan is adopted. *Id*. at 26.

> Any claim that the [petitioner] is violating the ADA must be raised in a timely manner, however, so that any reasonable accommodations can be made. *Accordingly, if a parent believes that the [petitioner] is unreasonably refusing to accommodate a disability, the parent should claim a violation of her rights under the ADA, either when a service plan is adopted or soon afterward. The court may then address the parent's claim under the ADA. Where a disabled person fails to make a timely claim that the services provided are inadequate to her particular needs, she may not argue that petitioner failed to comply with the ADA at a dispositional hearing regarding whether to terminate her parental rights. In such a case, her sole remedy is to commence a separate action for discrimination under the ADA. At the dispositional hearing, the family court's task is to determine, as a question of fact, whether petitioner made reasonable efforts to reunite the family, without reference to the ADA.* [*Id*. (footnote omitted; emphasis added).]

Respondent does not cite the ADA or reference *In re Terry* in her brief on appeal. Respondent also does not elaborate on specifically how her due process rights were violated. The thrust of respondent's cursory argument on appeal is that her mental illness was not reasonably accommodated during the child protective proceedings, and this resulted in the deprivation of her due process right to raise her child. However, our close review of the record confirms respondent was amply provided with special accommodations to meet her mental health needs and that the trial court properly considered whether reasonable reunification efforts were made.

For example, at the outset, the September 30, 2013 order of disposition provided that respondent was to be given mental health services and to maintain those services and follow the recommendations of the mental health professionals working with her. After respondent was released from Walter P. Reuther Psychiatric Hospital, and was essentially evicted from her group

home placement because of violent behavior, respondent was transient, roaming, and unable to be located by petitioner. The court report of April 11, 2014 also reflects that respondent voluntarily chose to stop taking her medication after she was released from hospitalization. Moreover, the trial court at the July 10, 2014 dispositional review hearing took great efforts to make sure that additional referrals were made for respondent for the provision of services. Even after such referrals were made, respondent was not participating in or taking advantage of all of these services. The transcript from the October 16, 2014 dispositional hearing reflects that respondent was receiving mental health services through Team Mental Health and petitioner was struggling to provide services to respondent where contact was broken because of her transient lifestyle. The November 14, 2014 dispositional hearing transcript confirms that petitioner was actively working with respondent to meet her mental health needs, providing mental health services and bus tickets for her transportation to the facility.

Particularly unfavorable to respondent is the fact that in November 2014, the record reflects that after services were provided, she was not participating because of her plans to move. As recently as February 2015, petitioner was actively working to reunify respondent with the minor child. Yet respondent was still missing visits with the minor child, and had also missed her parenting classes. Finally, the March 30, 2015 termination hearing transcript also reflects that respondent was amply provided services such as parenting classes, and that she was ultimately responsible for her failure to comply. The record confirms that petitioner acted to provide accommodations to respondent; however, such accommodations were often thwarted when respondent was transient and was not keeping in contact with petitioner. Further, while petitioner had an obligation to ensure that services were provided to respondent, respondent bore a responsibility to participate in the services that were offered. *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). After her child came within the jurisdiction of the family court, "a parent, whether disabled or not, must demonstrate that she can meet [her child's] basic needs before [the child] will be returned to her care." *In re Terry*, 240 Mich App at 28. Accordingly, on this record, the facts reflect that respondent received adequate accommodations and reunification services during the child protective proceedings.

Respondent next argues that the trial court erred in concluding that termination of her parental rights was in the minor child's best interests.[1] We disagree.

This Court reviews for clear error the trial court's decision regarding a child's best interest in a child protective proceeding. *In re JK*, 468 Mich at 209-210. A trial court's decision is clearly erroneous if, after a review of the entire record, this Court is left with a definite and firm conviction that the trial court made a mistake. *Id.* at 209. This Court will give great deference to the trial court's "special opportunity to observe the witnesses[ ]" and determine matters of credibility. *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013).

---

[1] Respondent does not challenge the statutory grounds for termination. Accordingly, we assume that the trial court did not clearly err in this regard. *In re JS and SM*, 231 Mich App 92, 98–99; 585 NW2d 326 (1999), overruled in part on other grounds by *In re Trejo Minors*, 462 Mich 341; 612 NW2d 407 (2000).

Whether termination of a parent's rights is in the child's best interests must be proven by a preponderance of the evidence. *Id*. at 90. The governing statute, MCL 712A.19b(5), provides, in pertinent part, as follows:

> If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made.

In determining a child's best interests, the trial court may consider the child's bond with the parent, the parent's ability to parent, "the child's need for permanency, stability, and finality," and whether there are advantages in placing the child in a foster home over the parent's home. *In re Olive/Metts Minors*, 297 Mich App 35, 42; 823 NW2d 144 (2012). The Michigan Supreme Court has recognized that "a parent's failure to comply with the parent-agency agreement is evidence of a parent's failure to provide proper care and custody for the child." *In re JK*, 468 Mich at 214.

The trial court concluded that termination was in the minor child's best interests where he was thriving in foster care and had the opportunity for both stability and permanency in his life with potential adoptions. This conclusion is well-supported by the record evidence. Respondent continually struggled with maintaining contact with petitioner and keeping up with consistent visits with her son. Respondent also had trouble complying with her treatment plan where she did not complete parenting classes, have secure housing, or have a legal source of income. Respondent also did not complete her required psychological or psychiatric evaluations. At one point during the trial court proceedings, respondent was roaming and transient for a period of time. Of particular concern are the facts in the lower court record regarding respondent's anger issues and her violent physical interactions with others. While respondent at times made marginal strides to comply with her treatment plan by attending some parenting classes, looking for housing and complying with her mental health treatment, her efforts were not consistent.

The record evidence also demonstrated that the minor child was thriving while living in foster care, and there were other individuals willing to give him the permanency and stability that he needed. On this record, we are not left with a definite and firm conviction that the trial court made a mistake in concluding that termination of respondent's parental rights was in the minor child's best interests.

Affirmed.


/s/ Michael J. Talbot
/s/ Kurtis T. Wilder
/s/ Jane M. Beckering