# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MOORE, Minors.

UNPUBLISHED
August 9, 2018

No. 341469
Wayne Circuit Court
Family Division
LC Nos. 06-453277-NA
          10-497762-NA
          17-001036-NA

Before: RIORDAN, P.J., and K. F. KELLY and BOONSTRA, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating his parental rights to his minor children, SJM, SLM, SNM, and KVM, under MCL 712A.19b(3)(b)(*i*), (g), (j), (k)(*ii*), (k)(*iii*), and (k)(*ix*). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL

Respondent is the father of four minor children by three different mothers. Although the events leading to the termination of respondent's parental rights occurred in 2016, respondent had by then been involved with Child Protective Services ("CPS") for many years.

Respondent's oldest daughter, SJM, now 15 years old, was originally removed from her mother's care and placed in respondent's care when she was a toddler. In 2007, respondent dropped SJM off with her mother, Lula Johnson (Johnson), and left her there for several weeks without providing for her care. At the time, Johnson was involved with CPS; her other children had been removed from her home and were in foster care. A petition requesting court jurisdiction over SJM was filed, but the petition was dismissed two months later and SJM was returned to respondent's care with intensive in-home services.[1]

---

[1] According to testimony from CPS Specialist Lisa Johnson (whom we will refer to as "Ms. Johnson" in order to distinguish her from SJM's mother) at the termination hearing, SJM's mother eventually completed a treatment plan and her other children were returned to her care; however, she allowed SJM to remain in respondent's care.

-1-

In 2010, respondent was living with SJM, his two other children, SLM and SNM, and their mother, T. Dejesus. CPS received a complaint of severe domestic violence between Dejesus and respondent, which led to the filing of a petition and the removal of the children from respondent's care. The court ultimately terminated the parental rights of Dejesus, but declined to terminate respondent's parental rights. Instead, respondent was permitted to continue to participate in services until SJM, SLM, and SNM were eventually again placed in his care.

Four years later, in 2016, the children were still living with respondent. Respondent's youngest daughter, KVM, was born in 2013 but never lived with respondent. In March 2016, CPS received a complaint alleging physical abuse, excessive discipline, and improper supervision relating to the three older children and opened an investigation. This investigation was still open in September 2015 when CPS received a complaint that respondent had physically abused SJM.

SJM testified that in August 2016, she found a cell phone at a playground and began using it secretly. Respondent had previously taken away SJM's own cell phone as a punishment. In September, respondent discovered that SJM had the phone when he saw her talking to a neighbor about using that neighbor's Wi-Fi connection. Later, when SJM was playing with her younger siblings in the basement of the family home, respondent ordered the other children to go upstairs. After the children left, respondent instructed SJM to pull her pants down and hold on to a pole. At that point, respondent struck SJM several times with an electrical cord across her back and legs. When SJM let go of the pole, respondent grabbed her by the hair and continued striking her. SJM testified that she suffered bleeding lacerations and significant bruising on her buttocks. After respondent was done beating her with the electrical cord, he shaved the hair off half of her head, and then made her sit in an ice bath for 15 minutes.

Respondent admitted that he had struck SJM with a belt while disciplining her for misbehavior. Respondent claimed that SJM's behavioral problems occurred over several months preceding his discovery that she had a cell phone and included worsening grades, skipping school, and not being responsible when babysitting her younger siblings. Additionally, respondent testified that he had found a nude photograph of SJM on the phone when he confiscated it. Respondent stated that, to discipline SJM for her behavioral problems, he "whipped" SJM seven or eight times with a thin belt. He admitted that when SJM turned to run up the stairs, he may have accidentally struck her in the head with the belt. Respondent denied making SJM sit in an ice bath. Respondent also admitted to cutting off half of SJM's hair, but claimed that he was merely attempting to give her a haircut before she returned to school and that SJM's resistance had prevented him from finishing the haircut. Respondent denied cutting SJM's hair to discipline or humiliate her.

The day after these events, SJM left the house, went to the library, and called her mother. When Johnson picked her daughter up, she noticed SJM's torn dress and partially shaved head. Johnson also saw bruises on SJM's arm, legs, back, and buttocks. Johnson immediately took SJM to the police and contacted CPS. From there, SJM was examined by physicians at Children's Hospital of Michigan.

During his examination of SJM, Dr. James Brown noted some bruising to her forehead and cheek, a slight swelling of her lower lip, and abrasions and bruising around her left forearm.

-2-

He also observed lacerations on her left buttock with overlying linear bruises striking across the left and right buttocks. Dr. Brown noted similar bruising across SJM's left and right posterior thighs. The medical records also noted that SJM's hair had been cut short across the right side of her head and she was missing a small patch of hair.

Sometime between September 16, 2016 and November 1, 2016, SJM disclosed to her mother that respondent had sexually abused her on the night of July 4 or morning of July 5, 2016, and that the abuse involved penetration of her vagina with his penis. SJM underwent a medical examination by Dr. Mary Lu Angelilli of Kid's Talk after she disclosed the sexual assault. Dr. Angelilli noted loop marks and linear scars on SJM's buttocks and thighs, as well as scars on her forearm. Based on the physical examination and SJM's disclosures, Dr. Angelilli concluded that SJM "was not only sexually abused and physically abused but was also tortured."

In May 2017, petitioner, the Department of Health and Human Services (DHHS), filed petitions alleging that respondent had physically and sexually abused SJM, and requested removal of the three oldest children from respondent's home and termination of respondent's parental rights to all four children. The trial court ordered the removal of the children. SJM was placed in the care of her mother. Because there were no relatives available to care for SNM and SLM, these children were placed together in a non-relative licensed foster home. Respondent's youngest daughter, KVM, remained in the care of her mother. Respondent had been arrested and charged with child abuse and criminal sexual conduct (CSC). During a criminal trial that followed, respondent was convicted of fourth-degree child abuse, but acquitted of the CSC charge.

The combined adjudication and termination hearing began on July 13, 2017, and concluded on September 20, 2017. In addition to the testimony of SJM and respondent regarding the events described above, CPS specialist Ms. Johnson testified that respondent admitted to "physically disciplining" SJM with a belt. Ms. Johnson also testified that all of the children were doing well in their placements. Ms. Johnson noted that the three oldest children had requested visits with respondent and all of the children appeared to have a bond with respondent. CPS Specialist Christina Adamic testified that KVM was doing "fantastic" in her mother's care, and had not had any contact with respondent since the summer of 2016. Jonathan Sharff, the foster care specialist assigned to SLM and SNM, testified that the two children were placed together in non-relative foster care and were doing well. Sharff testified that the children were bonded with their father and wanted to live with him, but that the foster parents would likely be willing to be a permanent placement for the children. Respondent denied sexually assaulting SJM and reiterated that he only used a belt as a form of physical discipline. At the conclusion of a termination hearing, the trial court found clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (g), (j), (k)(*ii*), (k)(*iii*), and (k)(*ix*), and also found that termination of respondent's parental rights was in the children's best interests.

This appeal followed.

## II. STATUTORY GROUNDS FOR TERMINATION

Respondent argues that the trial court erred by finding that statutory grounds to terminate his parental rights had been proven by clear and convincing evidence. We disagree. In order to terminate parental rights, the trial court must find that at least one of the statutory grounds for termination has been established by clear and convincing evidence. *In re Trejo*, 462 Mich 341, 355; 612 NW2d 407 (2000). This Court reviews for clear error the trial court's determination that statutory grounds for termination exist. MCR 3.977(K). A finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been committed. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

The trial court terminated respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (g), (j), (k)(*ii*), (k)(*iii*), and (k)(*ix*), which at the time relevant to this case permitted termination of parental rights under the following circumstances[2]:

> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:
>
> (*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.
>
> * * *
>
> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.
>
> (k) The parent abused the child or a sibling of the child and the abuse included 1 or more of the following:
>
> * * *
>
> (*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

---

[2] MCL 712A.19b(3)(g), (i), (k), (l), (m), and (n), have been amended, effective June 12, 2018. See 2018 PA 58. This case was decided before the effective date of the amendments.

(*iii*) Battering, torture, or other severe physical abuse.

\* \* \*

(*ix*) Sexual abuse as that term is defined in section 2 of the child protection law, 1975 PA 238, MCL 722.622.

After reviewing the record, we conclude that the trial court did not clearly err when it found that these statutory grounds for termination were established by clear and convincing evidence.

At the outset, we note that the trial court found sufficient grounds for termination under six statutory provisions: MCL 712A.19b(3)(b)(*i*), (g), (j), (k)(*ii*), (k)(*iii*), and (k)(*ix*). On appeal, respondent does not address the termination of his parental rights under MCL 712A.19b(3)(k)(*iii*) (parent battered, tortured, or severely physical abused a child or a sibling of the child). "The failure to brief the merits of an allegation of error is deemed an abandonment of the issue." *In re JS & SM*, 231 Mich App 92, 98; 585 NW2d 326 (1998), overruled in part on other grounds by *In re Trejo*, 462 Mich at 353 n 10. Respondent also omits this statutory ground in his statement of the questions presented. As a result, appellate review of this issue may be deemed waived. *In re BKD*, 246 Mich App 212, 218; 631 NW2d 353 (2001). Further, because only one statutory ground for termination must be established by clear and convincing evidence, respondent's failure to challenge the trial court's finding with respect to MCL 712A.19b(3)(k)(*iii*) may alone preclude appellate relief with respect to his challenge to the statutory grounds. *In re JS & SM*, 231 Mich App at 98-99. However, even presuming that respondent did not forfeit appellate relief, our review of the record indicates that the trial court did not clearly error when it found that statutory grounds for termination were established by clear and convincing evidence.

The trial court found SJM to be a credible witness in her description of respondent's physical and sexual abuse. Regarding the physical abuse, respondent argues that SJM's testimony was not credible, but medical records documented multiple bruises and lacerations to her face, head, buttocks, legs, and an arm. Dr. Angelilli's examination several weeks after the assault documented looped marks consistent with that of an electrical cord, and led her to believe that SJM had been not only physically abused, but tortured. Other physical evidence corroborated SJM's testimony, including SJM's missing hair. Although respondent persists in characterizing his actions in September 2016 as appropriate and warranted discipline, the trial court did not clearly err by finding that he had physically abused SJM.[3]

Regarding the sexual abuse, respondent denied sexually assaulting SJM. Notwithstanding respondent's denials, the trial court found that SJM was a credible witness and that respondent had sexually abused her. The trial court specifically noted several implausible statements made by respondent—including respondent's statements that he was in control while abusing SJM and that he was told by a CPS worker that he could physically discipline his children—that rendered him less than credible. The trial court then concluded that SJM was a

---

[3] Respondent was in fact convicted of criminal child abuse.

much more believable witness. This Court gives great deference to the special ability of the trial court to judge the credibility of the witnesses. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989). Additionally, SJM's testimony at the termination hearing was consistent with what she had reported to her mother and Dr. Angelilli.[4]

Further, there was ample evidence to conclude that the children would be at risk of harm if returned to respondent's care. Despite the credible evidence that respondent had physically and sexually abused SJM, respondent denied the sexual abuse and both minimized and justified the physical abuse as permissible discipline. Respondent has failed to take responsibility for any of his actions. This lack of insight into the nature of his conduct would place all of the children, not just SJM, at risk of harm if returned to respondent's care. As is often noted, "[h]ow a parent treats one child is certainly probative of how that parent may treat other children." *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001). For these reasons, the trial court did not clearly err when it found clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (g), (j), (k)(*ii*), (k)(*iii*), and (k)(*ix*).

## III. BEST-INTEREST DETERMINATION

Respondent also argues that the trial court clearly erred by finding that termination of his parental rights was in children's best interests. We disagree. "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of the parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). Whether termination of parental rights is in a child's best interests must be proven by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). We review for clear error a trial court's finding that termination of parental rights is in the child's best interests. *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009).

A trial court may consider several factors when deciding whether termination of parental rights is in a child's best interests, including the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. *In re Olive/Metts*, 297 Mich App 35, 42; 823 NW2d 144 (2012). The court may also consider such factors as psychological evaluations, the child's age, domestic violence, and a parent's history. *In re Jones*, 286 Mich App at 131.

The trial court did not clearly err when it found that termination of respondent's parental rights was in the best interests of the children. Although the court noted several factors supporting its decision, including respondent's prior CPS history, the trial court placed the most weight on the nature of the physical and sexual abuse perpetrated by respondent and the risk respondent would pose to all of the children if returned to his care.

---

[4] Although respondent was acquitted of the criminal CSC charge (to which the reasonable doubt standard of proof applies), the standard of proof applicable in a termination of parental rights proceeding is the lower clear and convincing evidence standard. MCL 712A.19b(3).

Respondent argues that the trial court gave inadequate weight to the bonds between him and his children. Both SLM and SNM informed their caseworker that they wished to be reunited with their father. It also appears that a bond at one time existed between respondent and SJM. However, SJM testified at the termination hearing, despite earlier requests to visit her father, that she wanted respondent's parental rights terminated. And any bond that existed between respondent and KVM was undoubtedly limited by the lack of contact for over one-third of the child's life. In any event, considering the nature of the physical and sexual abuse committed, the trial court did not clearly err when it concluded that any bond that may have existed between respondent and all four of his children could not be elevated above the children's need for safety and stability.

Respondent further argues that because SJM and KVM are in the care of their mothers, termination of his parental rights was not warranted. Under MCL 712A.19a(8)(a), a child's placement with relatives weighs against termination. However, because the children's biological mothers are not "relatives" as defined under MCL 712A.13a(1)(j), the trial court was not required to weigh the children's placement with them against termination. *In re Schandler*, 315 Mich App 406, 413; 890 NW2d 676 (2016).

SLM and SNM were in non-relative foster homes. When balancing the best-interest factors, a court may consider the advantages of a foster home over the parent's home and the possibility of adoption. *In re Olive/Metts*, 297 Mich App at 41-42. Sharff testified that the children were doing well in their placement, were happy, and that there were no special needs. Although the foster parents had not specifically said that they wanted to adopt the children, they were very attached to SLM and SNM and he felt that there was a good likelihood that the foster parents would be willing to adopt them in the future. The children were progressing in a stable home that had a good chance of becoming permanent.

In sum, the trial court did not clearly err when it held that termination of respondent's parental rights was in the children's best interests, notwithstanding any bonds that existed between respondent and his children.

Affirmed.

/s/ Michael J. Riordan
/s/ Kirsten Frank Kelly
/s/ Mark T. Boonstra