*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re K. CLARK, Minor.

UNPUBLISHED
November 4, 2021

No. 356561
Genesee Circuit Court
Family Division
LC No. 18-134802-NA

Before: MARKEY, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating her parental rights to her minor child, KC, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (failure to rectify other conditions), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm if returned to the parent). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In January 2018, KC was removed from respondent's care after respondent, who was herself a minor, was hospitalized for mental health issues, including threats to kill herself and KC. KC was initially placed with respondent's sister, MC, who held an active-duty military position. Shortly after the placement, MC was transferred to Hawaii; consequently, she returned KC to the Department of Health and Human Services (DHHS). KC was placed in a nonrelative licensed foster home and remained there for the duration of the case. Respondent pleaded no contest to the allegations in the petition that she was hospitalized and left KC without proper care or custody. At the time of the preliminary hearing, respondent was on probation for assaulting her mother.

From January 2018 to June 2019, respondent was offered a range of services, including parenting classes, mental health therapy, substance abuse treatment, and infant mental health services, as well as supervised visitation with KC. Although respondent made some short-term progress, the record shows that respondent was unable to learn to meet KC's special needs, which included developmental delays, frequent rashes, and dietary restrictions. Respondent also missed several drug screens and tested positive several times for marijuana and twice for cocaine. Respondent was hospitalized in early 2019 for "drug-induced psychosis" that she related to using marijuana in combination with her mental-health medications.

In June 2019, the goal in this case was changed from reunification to adoption, and respondent's parenting time was suspended. Respondent had several drug screens in June 2019 that were positive for marijuana. Respondent also discontinued her individual therapy and psychiatric services because she no longer wanted them. In August 2019, DHHS filed a supplemental petition for termination of respondent's parental rights to KC, based on her failure to rectify conditions that had brought KC into care and her failure to benefit from court-ordered services.

The termination hearing began on October 25, 2019. Erin Werth, the DHHS coordinator for Genessee County's "baby court" and "girl's court" programs,[1] testified regarding respondent's progress with various services as well as KC's health and well-being while in foster care. Werth indicated that at the time proceedings in this case began, respondent was fifteen years old and on probation for felonious assault, specifically "pull[ing] a knife out on her mother." She testified that respondent was homeless for part of her pregnancy and used drugs during her pregnancy; respondent had also been a victim of domestic violence and sexual assault before and during her pregnancy. According to Werth, respondent had completed some parenting classes but had not benefitted from them and was not able to appropriately parent KC. Werth testified that respondent did not take her mental health medication consistently and did not complete her individual therapy. She had several missed or positive drugs screens and was not compliant with her substance-abuse treatment. Respondent lived with her mother, which was not a safe environment for KC and exposed respondent to a significant risk of domestic violence. Werth stated that respondent had almost no support system or ability to obtain safe housing for herself and KC.

Regarding KC, Werth testified that he was doing well in his foster care placement, and that several of his physical symptoms, as well as self-harm behaviors, had improved after respondent's parenting-time visits were suspended. Werth indicated that KC no longer suffered from severe rashes and stress-induced eczema.

Respondent also testified regarding her progress. She felt that she had benefitted from parenting classes and that her visits with KC "usually" went well. She testified that she might forget her medication occasionally but was mostly compliant, and that she had learned not to mix the medication with marijuana, although she stated that if she was going to smoke marijuana, she would choose not to take her medication. After respondent testified, the proofs were closed. The trial court adjourned the remainder of the hearing until October 29, 2019 "for closings and ruling."

At the continued termination hearing on October 29, 2019, respondent's counsel stated that she wanted to have MC testify regarding potential relative placement. At a hearing two days later, respondent's counsel indicated that MC would testify that although she had been asking DHHS

---

[1] A baby court is "a specialized docket within the judicial system providing infant mental health services for infants and toddlers under the jurisdiction of the Family Court because of substantiated abuse and/or neglect." See https://mi-aimh.org/babycourtsinmichigan/ (last accessed October 6, 2021). Girls court is "a specialized prevention docket designed to meet the unique and complex needs of adolescent females who are under the jurisdiction of the Genesee County Circuit Court, Family Division." See https://thehagermanfoundation.org/portfolio-item/the-girls-court/ (last accessed October 6, 2021). Both programs provided court-ordered services to respondent.

for placement, DHHS had denied her requests. Respondent's counsel requested that the trial court order an interstate home study for MC, who was then stationed in Texas. MC was present at the hearing and testified that she was "[m]ore than willing" to care for KC. The trial court ordered the home study.

A home study was completed in March 2020, which resulted in approval of MC for placement. In May 2020, respondent filed a motion for relative placement, and in June 2020, she filed a "motion for a mistrial and/or a new trial," arguing that DHHS had misled the parties and the trial court into believing that MC did not request placement after serving in Hawaii. Respondent also argued that her "due process and constitutional rights would be violated" if the termination hearing did not continue in person. The trial court denied respondent's motion for relative placement and ordered that MC remain with his foster parents pending the conclusion of the termination hearing. In the opinion and order denying respondent's motion for relative placement, the trial court concluded, on the basis of testimony that was already presented at the termination hearing, that at least one of the statutory grounds for termination had been established by clear and convincing evidence; therefore, the only remaining issue was whether termination was in KC's best interests.

In response to respondent's motion for a mistrial or new trial, the prosecution, legal guardian ad litem (LGAL), and foster parents argued that enough testimony had already been presented for the court to issue its ruling and urged the court to do so because of KC's need for permanency and stability. The trial court denied respondent's motion for a mistrial and/or new trial, noting that the continuation of the termination hearing had been adjourned multiple times because of COVID-19 restrictions.

At a review hearing in January 2021, respondent's counsel proposed that the trial court set the conclusion of the termination hearing for February 17, 2021. The trial court told the parties that they should be prepared to appear on February 17, 2021, but indicated that it might decide to issue an opinion and order regarding best interests without holding the remainder of the termination hearing. On February 16, 2021, the trial court issued an opinion and order along with a final order terminating respondent's parental rights. This appeal followed.

II. DUE PROCESS

Respondent argues that the trial court violated her right to due process of law when, in making its termination decision, it relied on evidence beyond the testimony presented at the October 25, 2019 termination hearing. Specifically, respondent challenges the trial court's reliance on oral and written statements from KC's foster parents, statements from Infant Mental Health expert Amy Scott (Scott), and letters from members of the community in support of KC's foster parents. We disagree. "[W]hether a party has been afforded due process is a question of law, subject to review de novo." *In re Blakeman*, 326 Mich App 318, 331; 926 NW2d 326 (2018) (quotation marks and citation omitted).

"Both the Michigan Constitution and the United States Constitution preclude the government from depriving a person of life, liberty, or property without due process of law." *In re TK*, 306 Mich App 698, 706; 859 NW2d 208 (2014) (quotation marks and citation omitted). "There are two types of due process: procedural and substantive." *Id*. "Procedural due process

-3-

requires notice and a meaningful opportunity to be heard before an impartial decision-maker." *Id*. "The essence of a substantive due process claim is the arbitrary deprivation of liberty or property interests." *Id*. "It is well established that parents have a significant interest in the companionship, care, custody, and management of their children. This interest has been characterized as an element of 'liberty' to be protected by due process." *In re Gach*, 315 Mich App 83, 99; 889 NW2d 707 (2016), quoting *In re Brock*, 442 Mich 101, 109; 499 NW2d 752 (1993). "Ultimately, due process requires fundamental fairness." *In re TK*, 306 Mich App at 706.

We conclude that respondent's due process rights were not violated, because she had notice and an opportunity to be heard regarding all of the evidence, and the trial court was permitted to rely on evidence from the entire record in making its determination.

In the opinion and order terminating respondent's parental rights, the trial court stated that it "hereby cites and incorporates by reference oral and written arguments and statements provided to the court by the . . . foster parents that detail clear-and-convincing evidence for such termination and prove same is in the best interests of [KC]." It is unclear to which specific arguments and statements the trial court was referring; counsel for the foster parents appeared and presented arguments at all but two of the review hearings from May 2020 until January 2021, the last hearing before respondent's parental rights were terminated. The foster parents filed responses to respondent's motion for relative placement and motion for a mistrial and/or new trial. Further, the foster parents filed written statements in connection with four hearings and made oral statements about KC's progress at two hearings.

Regardless of which specific statements or arguments the trial court was referring to, respondent had notice and an opportunity to be heard regarding them. The proofs of service in the record indicate that the foster parents' attorney mailed and e-mailed to respondent's counsel all responses and documents the foster parents filed with the court. This included the foster parents' responses to respondent's motion for change in placement and motion for mistrial/new trial, along with the foster parents' written statements in support of KC's continued placement with them. Respondent's counsel was present at all of the hearings at which the foster parents and their attorney were present, and respondent's counsel made relevant arguments in response to the arguments made by the foster parents' attorney. Although respondent's counsel never mentioned the written statements filed by the foster parents or made any arguments in response to the updates that the foster parents made on the record at the hearings, there is no evidence that counsel was prohibited from doing so.

With regard to the statements from Scott, the trial court stated in its opinion and order, in a section titled "court's factual findings":

> Based upon the allegations in the petition, corresponding testimony of Petitioner's expert witnesses [Ms. Erin Worth [sic], MSW, LMSW (infant-mental-health expert and Ms. Amy Scott, MSW, LMSW (infant-mental-health expert)] and Respondent-Mother, and respective arguments of the parties, the Court renders its finding of fact as to Respondent-Mother . . . as follows . . . .

The trial court did not mention Scott anywhere else in the opinion and order. Scott did not testify at the October 25, 2019 termination hearing. In fact, Scott did not offer sworn testimony at any of

the hearings. However, Scott made statements at many of the early hearings and, in pertinent part, made statements at the preliminary hearing pertaining to the termination petition that DHHS filed. Respondent's counsel was present at this hearing but did not make any arguments in response to Scott's statements. Respondent had notice and a meaningful opportunity to be heard regarding Scott's statements, and the trial court was allowed to take judicial notice of the facts contained in the transcript. See MRE 201(c) and (e); *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009) (stating that "a court may take judicial notice of its own files and records").

Respondent also had notice and the opportunity to be heard regarding the letters from the community in support of KC's foster parents. These letters were attached to two of the written statements filed by the foster parents and, as previously stated, the record indicates that respondent received these statements. Furthermore, at a hearing in November 2020, the foster parents' attorney told the trial court, "You have four letters of support that I had filed last time with the foster parents' statement from their local community and friends . . . and these are African American people submitting these letters . . . ."

In addition to respondent having notice and the opportunity to be heard regarding the challenged evidence, the trial court was also permitted to rely on this evidence in making its best-interest determination, and was not required to limit its consideration to evidence presented at the termination hearing. A child protective proceeding is a single continuous proceeding that begins with a petition and ends with a determination of whether a respondent's parental rights will be terminated. *In re Ferranti*, 504 Mich 1, 24; 934 NW2d 610 (2019) (citations omitted). The trial court was required to "apprise itself of all relevant circumstances" when making its determination, including records of all review hearings; "evidence admitted at any one hearing is to be considered evidence in all subsequent hearings." *In re LaFlure*, 48 Mich App 377, 391; 210 NW2d 482 (1973).

In sum, because respondent had notice and an opportunity to be heard regarding the arguments and statements made by the foster parents, the statements Scott made at the preliminary hearing pertaining to the termination petition, and the letters in support of the foster parents, and because the trial court was permitted to review this evidence in making its best-interest determination, respondent's due process rights were not violated. *Blakeman*, 326 Mich App at 331.

## III. TESTIMONY FROM MC

Finally, respondent argues that the trial court erred by not allowing MC to testify that placement with her would be in KC's best interest. We conclude that respondent has abandoned this argument.

In her brief on appeal, after citing two Michigan Supreme Court orders, *In re Affleck/Kutzleb/Simpson Minors*, 505 Mich 858 (2019), and *In re Timon*, 501 Mich 867 (2017), respondent relegated her argument to one sentence: "In this case the trial court disallowed evidence of a juvenile guardianship." Respondent does not attempt to explain how these two orders are relevant to this case or how any additional testimony from MC would have changed the trial court's best-interests determination. "The failure to brief the merits of an allegation of error is deemed an abandonment of an issue." *In re JS & SM*, 231 Mich App 92, 98; 585 NW2d 326

(1998), overruled in part on other grounds by *In re Trejo Minors*, 462 Mich 341, 353; 612 NW2d 407 (2000). Accordingly, we decline to address this issue at length.

In any event, respondent's reliance on *Affleck/Kutzleb/Simpson Minors* and *Timon* is misplaced. In both orders, our Supreme Court remanded for the trial court to make an individualized best-interests determination without regard to DHHS's generalized policy disfavoring guardianship for children under a certain age. See *Affleck/Kutzleb/Simpson Minors*, 505 Mich at 858; *Timon*, 501 Mich at 867. Here, respondent does not argue, and there is no indication in the record, that DHHS did not recommend a guardianship because it had a generalized policy disfavoring guardianship for children under a certain age, let alone that the trial court relied on such a policy in its findings and conclusions. In fact, as the trial court noted, respondent's caseworker stated in an affidavit that she had discussed guardianship of KC with MC in 2018, and that MC had declined. MC never petitioned the trial court for guardianship of KC, nor did anyone else. Under these circumstances, the trial court did not err by determining that DHHS "adequately considered a juvenile guardianship" for KC during the proceedings below.[2]

Affirmed.

/s/ Jane E. Markey
/s/ Jane M. Beckering
/s/ Mark T. Boonstra

---

[2] We also note that respondent does not otherwise challenge the court's best-interests analysis or the statutory bases relied upon for termination. Nevertheless, we conclude, on the basis of a thorough review of the record, that the trial court properly found grounds to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j), and that it properly determined that termination was in KC's best interests.