*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* M. J. B. JONES, Minor.

UNPUBLISHED
June 15, 2023

No. 363898
Berrien Circuit Court
Family Division
LC No. 2022-000042-NA

Before: CAMERON, P.J., and MURRAY and GADOLA, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court order terminating his parental rights to the minor child, MJ, under MCL 712A.19b(f). We affirm.

Respondent-father argues that the trial court erred by finding that it was in the child's best interests to terminate respondent-father's parental rights.[1] "[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court's finding is reviewed for clear error. *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App at 80.

If the court finds that the petitioner established one or more grounds for termination of parental rights by clear and convincing evidence, the court must order the termination of the parent's parental rights if it also finds that termination is in the child's best interests.

---

[1] Because respondent-father does not challenge the statutory grounds for termination, we presume that the trial court did not clearly err by finding that the unchallenged statutory grounds were established by clear and convincing evidence. See *In re JS & SM*, 231 Mich App 92, 98-99; 585 NW2d 326 (1998), overruled in part on other grounds *In re Trejo Minors*, 462 Mich 341, 353; 612 NW2d 407 (2000). Regardless, having reviewed the record, we conclude that the trial court did not clearly err by finding that MCL 712A.19b(3)(f)(*i*) and (*ii*) were established by clear and convincing evidence.

MCL 712A.19b(5); *In re Beck*, 488 Mich 6, 11; 793 NW2d 562 (2010). The petitioner bears the burden of proving that termination is in the child's best interests by a preponderance of the evidence. *In re Moss*, 301 Mich App at 90. In making the best-interest determination, the focus is on the child, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016).

When deciding whether termination is in the child's best interests, the trial court may consider "the child's bond to the parent[;] the parent's parenting ability[;] the child's need for permanency, stability, and finality[;] and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). For example, the court can properly consider evidence that the children are not safe with the parent, that the children are thriving in foster care, and that the foster-care home can provide stability and permanency. *In re VanDalen*, 293 Mich App 120, 141; 809 NW2d 412 (2011). Likewise, a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, and the possibility of adoption are relevant considerations. *In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014). A child's placement with relatives, however, weighs against termination. *In re Olive/Metts*, 297 Mich App at 43. Consequently, a "court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives, however, renders the factual record inadequate to make a best-interest determination and requires reversal." *Id.*

The child at issue was only a few months old when she started living with the guardians. At the time of termination, the child had been in the care of the guardians for 75% of her life. During that time, respondent-father saw the child only a handful of times, and he admitted that the child would not recognize him because the child had not seen him since she was one year old. Accordingly, there is no indication in the record that respondent-father shared an appropriate parent-child bond with the child at the time of termination. See *id*. at 41-42.

Further, the record supports the trial court's finding that respondent-father could not provide stability and permanency for the child in the future, because he had failed to do so during the proceedings. The evidence showed that respondent-father has been in and out of incarceration for most of his adult life. Additionally, respondent-father was homeless and agreed that the child should remain in the care of the child's guardians because of his unstable living situation. Respondent-father adamantly acknowledged that the child was well taken care of and that the guardians were the perfect candidates to raise the child. This evidence supports the conclusion that the guardians have, and will continue to, provide stability and permanency for the child. As the trial court correctly pointed out, respondent-father had many opportunities to establish some sort of relationship with the child and had failed to do so; therefore, the evidence provided a strong inference that he would not now suddenly change his living situation that had been the same his entire adult life.

At the termination hearing, the trial court specifically addressed the lack of bond between the child and respondent-father. In doing so, the trial court reviewed respondent-father's incarceration history and domestic violence history, as well as his previous inability to care for the child. The court specifically recognized the child's excellent relationship with her guardians and that the child already had permanency and stability. In making this determination, the court appropriately reviewed the various considerations, including the child's bond with respondent-father, any domestic violence history, residential permanency, stability, and the advantages and

opportunities for the child to thrive in the guardians' home. The court's findings were not clearly erroneous.

Respondent-father argues that the child's placement with his relatives weighed against termination, citing *In re Mason*, 486 Mich 142, 169; 782 NW2d 747 (2010. *In re Mason*, however, is distinguishable because the parental rights of the respondent-father in that case were terminated solely because the respondent-father was incarcerated throughout the review period, despite the respondent-father's repetitive attempts to contact his children and continue a relationship. Here, respondent-father was not incarcerated for the duration of these proceedings (he was out of jail for roughly seven months) and still failed to contact and provide any type of support to the child, despite having the ability to do so. Additionally, contrary to respondent-father's argument on appeal, the trial court did expressly address the fact that the child was residing with a relative:

> [T]here is evidence that the Court finds compelling that this child has an excel— excellent relationship with her current guardians; *that is a relative situation*. I find that permanency and stability and final—finality in this case weigh very heavily on the Court in terms of what is truly best for this child. [Emphasis added.]

The trial court's finding that the termination of respondent-father's parental rights was in the child's best interests was not clearly erroneous.

Affirmed.

/s/ Thomas C. Cameron
/s/ Christopher M. Murray
/s/ Michael F. Gadola