*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re MARSHALL/BARNETT, Minors.

UNPUBLISHED
July 27, 2023

No. 363800
Hillsdale Circuit Court
Family Division
LC No. 2020-000372-NA

Before: RIORDAN, P.J., and MARKEY and YATES, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order re-terminating[1] her parental rights to the minor children, AM, CM, DB, and RB, under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g) and (j). We affirm.

## I. STANDARD OF REVIEW

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). After the trial court determines that at least one of the statutory grounds has been met, the trial court must find by a preponderance of the evidence that termination is in the child's best interests before it can terminate parental rights. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). This Court reviews the trial court's finding regarding the child's best interests for clear error. *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to

---

[1] Respondent's parental rights were first terminated in January 2022. This Court granted respondent's motion to vacate the order terminating respondent's parental rights and remanded this matter to the trial court for a new termination hearing because the trial court violated her right to due process by failing to make a discernible, audible recording of the original hearing capable of being transcribed for appellate review. *In re Marshall/Barnett Minors*, unpublished order of the Court of Appeals, entered June 9, 2022 (Docket No. 360150).

the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App at 80 (quotation marks and citation omitted).

## II. BEST INTERESTS

In her sole issue raised on appeal, respondent argues that the trial court erred by finding that termination of her parental rights was in the children's best interests.[2] We disagree.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012), citing MCL 712A.19b(5). "[T]he focus at the best-interest stage" is on the child, not the parent. *In re Moss*, 301 Mich App at 87. The trial court should weigh all the evidence available on the record to determine the child's best interests. *In re Trejo*, 462 Mich at 356. The trial court may consider such factors as "the child's bond to the parent[;] the parent's parenting ability[;] the child's need for permanency, stability, and finality[;] and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). Other considerations include the length of time that the child was in foster care or placed with relatives, the likelihood that "the child could be returned to [his or] her parent's home within the foreseeable future, if at all," and compliance with the service plan. *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012). Further, the trial court must "consider the best interests of each child individually and . . . explicitly address each child's placement with relatives at the time of the termination hearing if applicable." *In re Olive/Metts*, 297 Mich App 44. Relative placement weighs against termination, but it does not preclude a finding that termination is in the child's best interests. *Id*. at 43.

First, respondent contends that the trial court simply indicated that the children's best interests supported termination without properly considering the best interests of the individual children and without explicitly addressing the children's differing placements. This contention is not supported by the record. The trial court determined that termination of respondent's parental rights was in the best interests of all four children individually, and it explicitly addressed the children's differing placements. In relation to AM and CM, the trial court recognized that they were placed with a relative. The trial court explained that both children were young and needed stability and consistency. The trial court also explained that AM and CM themselves have expressed their desire to live with their grandmother and that their grandmother provided stability. In relation to DB and RB, who were placed with a foster mother, the trial court explained that both children flourished in their foster placement. They were no longer developmentally behind, and they received the nurturing and stability that they needed from their foster mother. Finally, the trial court explained that all four children had secure attachments to their caregivers and were no

---

[2] Because respondent does not challenge the statutory grounds for termination, this Court may presume that the trial court did not clearly err by finding that the unchallenged statutory grounds were established by clear and convincing evidence. See *In re JS & SM*, 231 Mich App 92, 98-99; 585 NW2d 326 (1998), overruled in part on other grounds *In re Trejo Minors*, 462 Mich at 353. Nonetheless, we are satisfied from our review of the record that the trial court did not clearly err when it found that each of the cited statutory grounds for termination were established by clear and convincing evidence.

longer in fight-or-flight mode. The trial court thus made express findings on the record regarding each child and explicitly considered that AM and CM were with a relative placement. See *id.* at 44.

Respondent also contends that the best-interests factors favored her because she had a strong bond with her children, she had parenting ability because she parented the children since birth, and she had a job and home waiting for her upon release from jail. Additionally, she contends that the home of a stranger had a serious disadvantage over her home because a mother's love would be absent in a foster home. Finally, respondent asserts that she was in substantial compliance with the parent-agency treatment plan.

The trial court did not clearly err with respect to its best-interests analysis for all four children. The record does not support respondent's assertion that she had a strong bond with her children. Instead, the record suggests that she had minimal and potentially no bond with her children. Each of the four children had a trauma assessment, which revealed that each child lacked an attachment to respondent. When respondent had the opportunity to bond with her children during parenting-time visits, these visits went poorly and were eventually suspended because of the children's negative response to respondent. During these visits, respondent was instructed how to engage with her children and how to develop a child-parent bond. She did not comply with this instruction and did not make progress during parenting time.

In contrast, the children had bonds with their respective caregivers. CM initially struggled to developed a secure attachment to his paternal grandmother. Over the course of this case, however, he developed a secure attachment to his grandmother. By the time of the re-termination hearing, both CM and AM requested that their grandmother adopt them. DB and RB were both very young when they were removed from respondent and did not recognize her. Both developed bonds with their foster mother, who raised them most of their lives.

The record does not support the assertion that respondent raised the children since birth or had parenting ability simply because she raised them. Evidence was presented that even before the initiation of this case, respondent did not always have AM in her care. Instead, AM spent a significant amount of time with her maternal grandmother. Additionally, respondent did not develop parenting skills. She failed to complete her parent-agency treatment plan. Under her parent-agency treatment plan agreement, respondent was required to complete a psychological evaluation; participate in, complete, and benefit from individual therapy; participate in parenting time; maintain an appropriate house; and participate in and follow the recommendations of a domestic-violence assessment. The Department of Health and Human Services presented evidence that respondent failed to comply with the parent-agency treatment plan. Respondent completed a psychological evaluation, but she did not complete and benefit from the other goals in her parent-agency plan. Respondent did not maintain an appropriate house for her children. Respondent participated in therapy to address domestic violence, but she did not complete or benefit from that therapy. Respondent herself testified at the re-termination hearing that she treated therapy as a way to reunify with her children, as opposed to an opportunity to address the domestic violence that she experienced.

Respondent did not have a job and home waiting for her upon release from jail. Respondent testified at the re-termination hearing that she spoke with a landlord about renting an apartment

and that she could regain her old job. Respondent did not take the steps to confirm either housing or the job. Respondent asserts that the potential job and housing showed that she could provide permanency, stability, and finality for her children. Beyond the fact that she did not have a job or housing secured, respondent ignores that fact that if her parental rights were not terminated at the re-termination hearing, she would have to start over in terms of building a bond with her children and services. She would still need extensive therapy and parenting education.

Respondent's argument that the foster mother cannot provide a mother's love because she is not a biological mother is unpersuasive. A cursory glance to the record in this case rebuts such an assertion. DB and RB's foster mother took in two very young children exhibiting signs of trauma. Early in this case, both DB and RB leaned away when adults held them, did not make eye contact, and did not seek help from adults. Through the foster mother's care, DB and RB grew socially. RB expressed her bond with the foster mother by hugging and snuggling with her. By the termination hearing, DB and RB saw the foster mother as their mother and had a secure bond with her.

Ultimately, the trial court heard evidence that respondent had little bond with her children and did not develop the skills to parent her children. The trial court also heard that the children started to blossom developmentally once they were removed from respondent's care and stopped having visitation with respondent. Further, the trial court heard that the children were happy in their respective homes and had the stability and support they needed. Given the totality of the facts as discussed herein, trial court's best-interests determination on the record does not leave a "definite and firm conviction that a mistake has been committed . . . ." *In re Moss*, 301 Mich App at 80 (quotation marks and citation omitted).

### III. CONCLUSION

The trial court did not clearly err by finding that termination of respondent's parental rights was in the children's best interests. We affirm.

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ Christopher P. Yates

-4-