*In re* JS and SM

Docket No. 204991. Submitted June 2, 1998, at Grand Rapids. Decided August 7, 1998, at 9:00 A.M.

The Department of Social Services, now the Family Independence Agency, petitioned the Oakland County Probate Court to terminate the parental rights of Tonya Miller and Michael Sherman to J. S. and of Tonya Miller and David Miller to S. M. nearly seven years after the court took jurisdiction over the two children and their siblings and conducted the initial disposition hearing. The court, Joan E. Young, J., terminated the respondents' parental rights to the two children. The court found, under MCL 712A.19b(3)(c)(i); MSA 27.3178(598.19b)(3)(c)(i), that the parents were respondents in a proceeding brought under Chapter XIIA of the Probate Code, 182 or more days had elapsed since the issuance of an initial dispositional order, and the conditions that led to the adjudication continued to exist and there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering the ages of the children. The court also found, under MCL 712A.19b(3)(g); MSA 27.3178(598.19b)(g), that the parents, without regard to intent, failed to provide proper care or custody for the children and there was no reasonable expectation that the parents would be able to provide proper care and custody within a reasonable time considering the ages of the children. The court did not find that termination of parental rights would not be in the children's best interests, MCL 712A.19b(5); MSA 27.3178(598.19b)(5). Tonya Miller appealed.

The Court of Appeals *held*:

1. Because the appellant did not argue that the statutory grounds for termination of parental rights were not proved, it is assumed that the probate court did not clearly err in finding clear and convincing evidence of the statutory grounds for termination.

2. The probate court did not clearly err in not finding that termination of parental rights to the children is clearly not in the children's best interests. Contrary to the appellants' contention, a probate court, when determining under MCL 712A.19b(5); MSA 27.3178(598.19b)(5) whether termination of parental rights would not be in a child's best interests, is not bound to make findings by

considering the best interests factors of the Child Custody Act, MCL 722.23; MSA 25.312(3). However, it is entirely appropriate for a probate court to consider many of the concerns underlying those best interests factors in deciding whether to terminate parental rights.

Affirmed.

1. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — APPEAL.

   A probate court must find that at least one of the statutory grounds for termination of parental rights has been shown by clear and convincing evidence before it may terminate those rights; once the court finds that a statutory ground exists, the court must order termination, unless the court finds that termination is clearly not in the child's best interests; the petitioner bears the burden of proving a statutory ground for termination, while the respondent bears the burden of going forward with evidence that termination is clearly not in the child's best interests; the probate court's findings of fact are reviewed on appeal for clear error (MCL 712A.19b[3],[5]; MSA 27.3178[598.19b][3],[5]; MCR 5.974[I]).

2. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — BEST INTERESTS OF CHILDREN.

   A probate court, when determining whether termination of parental rights clearly would not be in the child's best interests, may, but is not required to, consider the best interests factors specified in the Child Custody Act (MCL 712A.19b[5], 722.23; MSA 27.3178[598.19b][5], 25.312[3]).

*David G. Gorcyca*, Prosecuting Attorney, *Richard H. Browne*, Chief, Appellate Division, and *Anica Letica*, Assistant Prosecuting Attorney, for Family Independence Agency.

*Michele M. Welz*, for Tonya Miller.

*Michael L. Bars*, Guardian Ad Litem for J. S. and S. M.

Before: MACKENZIE, P.J., and WHITBECK and G. S. ALLEN*, JJ.

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

WHITBECK, J. Respondent Tonya Miller appeals as of right a probate court order terminating her parental rights to two minor children under MCL 712A.19b(3)(c)(i) and (g); MSA 27.3178(598.19b) (3)(c)(i) and (g). We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Respondent appeals as of right a probate court order terminating her parental rights to J.S., born November 25, 1982, and S.M., born August 21, 1984. The probate court also terminated the parental rights of the fathers, Michael Sherman and David Miller, respectively, but they have not appealed. Respondent also has four other children, but they are not covered by the probate court order being appealed.

Petitioner Department of Social Services, now the Family Independence Agency (FIA), commenced proceedings in this case during November of 1989 when it petitioned the probate court to take jurisdiction over all six children. In December of 1989, the probate court issued an order taking jurisdiction over the children. Following the initial disposition hearing before a referee in January of 1990, the probate court released the children to respondent but ordered that she and David Miller comply with certain specified requirements, including parenting classes, counseling, and a substance abuse evaluation. Following a review hearing in March of 1990, the probate court modified the case service plan to specify that the parents not use alcohol. Following a review hearing in May of 1990, the probate court ordered that the two youngest children be placed in a foster care home. By the time of the July 1990 review hearing, respondent and David Miller had separated, and by the time of the

October 1990 review hearing, respondent was living with Thomas Spears.

Additional review and permanency planning hearings followed during 1991, 1992, and 1993. In August 1993, the FIA moved to have J.S., S.M., and one of the other children removed from respondent's home because of alleged physical abuse by respondent and Thomas Spears, and the probate court entered an order to have these children removed. J.S. and S.M. were placed together in foster care. However, J.S. was removed from the foster home, because of his behavior, and was placed in Children's Village. During 1994, J.S. was removed from Children's Village, again for behavioral problems, and was placed in the St. Vincent and Sarah Fisher Home for Children. Further, between March and July 1994, respondent was incarcerated for violating her probation in a criminal case. On June 1, 1995, the probate court terminated its jurisdiction over the other child, leaving only J.S. and S.M. subject to its jurisdiction.

During 1996, three delinquency petitions were filed for J.S., alleging malicious destruction and assaultive conduct; J.S. pleaded guilty to one malicious destruction charge and one assault and battery charge, both of which involved incidents at the St. Vincent Home. The referee of the probate court took this plea under advisement and ultimately recommended that the delinquency petition be dismissed but recommended that a termination petition be filed, and, in June of 1996, the probate court entered an order requiring the filing of a termination petition.

The probate court held hearings in January and February of 1997 concerning whether statutory grounds for termination had been met. During the

hearings, there was testimony that respondent attended only three of the nineteen family therapy sessions for J.S. Further, there was testimony that, commencing sometime in November of 1995, respondent was required to take Breathalyzer tests at a police station before visiting J.S. However, in June of 1996, it was discovered that respondent had submitted forged test results and, for the six-month period between January and June of 1996, thirty-six such forged test results were identified.

Respondent also testified and admitted that she is an alcoholic and that she had forged some of the Breathalyzer test results. Respondent claimed that she had submitted the forged test result for financial reasons, because she had to pay for the tests. She also stated that she had six relapses into alcohol use since 1992, two of which occurred in 1996, and that she did not follow through on a recommendation made in 1992 that she have in-patient treatment. Respondent also testified that she was currently unemployed and was being supported by Thomas Spears.

The probate court entered its order terminating parental rights on March 7, 1997. The probate court found that statutory grounds for termination had been established with respect to respondent pursuant to MCL 712A.19b(3)(c)(i); MSA 27.3178(598.19b)(3)(c)(i) and MCL 712A.19b(3)(g); MSA 27.3178(598.19b)(3)(g). The probate court then held separate hearings regarding the best interests of J.S. and S.M. in March and April of 1997. Although respondent testified that she had not had a drink since December 5, 1996, there was also testimony from a guardian for two of respondent's other children that respondent was

intoxicated during a February 1997 visit with these younger children and that respondent had a positive marijuana screen in May of 1996. In May of 1997, the probate court issued its opinion and order for the termination of the parental rights of respondent (as well as Michael Sherman and David Miller) to J.S. and S.M.

In summary, the basic facts and procedural history of this matter are part and parcel of the sadly familiar litany of parental neglect and failure, substance abuse, behavioral problems, and tortuous and prolonged legal proceedings that so often characterize parental rights termination cases. At the outset of such cases, one may well wonder whether the state is justified in proposing the ominously final step of terminating parental rights; at the conclusion, one can only wonder what took so long.

## II. THE STANDARD OF REVIEW

A two-pronged test applies to a probate court's decision to terminate parental rights. First, the probate court must find that at least one of the statutory grounds for termination, MCL 712A.19b; MSA 27.3178(598.19b), has been met by clear and convincing evidence. *In re Jackson*, 199 Mich App 22, 25; 501 NW2d 182 (1993). This Court reviews the probate court's findings of fact under the "clearly erroneous" standard. MCR 5.974(I); *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989). A finding of fact is clearly erroneous where the reviewing court is left with a definite and firm conviction that a mistake has been made. *In re Jackson, supra* at 25.

Second, under an amendment of MCL 712A.19b; MSA 27.3178(598.19b), effective January 1, 1995, the

decision to terminate parental rights is governed by the following statutory provision:

> If the court finds that there are grounds for termination of parental rights, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made, unless the court finds that termination of parental rights to the child is clearly not in the child's best interests. [MCL 712A.19b(5); MSA 27.3178(598.19b)(5).]

Before this amendment, the probate court's ultimate decision to terminate parental rights was discretionary. *In re Hall-Smith*, 222 Mich App 470, 471; 564 NW2d 156 (1997). Under the amended statute, the Legislature created a mandatory presumption that can only be rebutted by a showing that termination is clearly not in the child's best interests. Although the burden of proof remains on the petitioner to show that a statutory ground for termination was met by clear and convincing evidence, the burden of going forward with evidence that termination is clearly not in a child's best interests rests with the respondent. *Id.* at 472-473. Further, we currently review the probate court's now nondiscretionary decision regarding termination in its entirety for clear error. *Id.* at 472. See also *In re Hamlet (After Remand)*, 225 Mich App 505, 515; 571 NW2d 750 (1997).

### III. THE STATUTORY GROUNDS FOR TERMINATION

Respondent does not argue that the statutory grounds for termination were not proved. The failure to brief the merits of an allegation of error is deemed an abandonment of an issue. *People v Kent*, 194 Mich App 206, 210; 486 NW2d 110 (1992). Hence, we assume for purposes of this decision that the probate

court did not clearly err in finding clear and convincing evidence of the following statutory grounds for termination from MCL 712A.19b(3); MSA 27.3178(598.19)(b)(3):

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (i) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the age of the child.
>
> \* \* \*
>
> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the age of the child.

### IV. THE BEST INTERESTS OF THE CHILDREN DETERMINATION

Respondent apparently contends that the best interests factors in the Child Custody Act, specifically MCL 722.23; MSA 25.312(3), must be evaluated in parental rights termination cases.[1] The case on which respondent relies, *In re Barlow*, 404 Mich 216, 236; 273 NW2d 35 (1978), holds that the factors in MCL 722.23; MSA 25.312(3) are relevant to, and properly considered by a probate court "for guidance" in, evaluating the best interests of a child born out of wed-

---

[1] Respondent states in her brief, "The definition of what is in the 'best interests of the child' is found in the Child Custody Act, specifically, [MCL 722.23; MSA 25.312(3) ], and made applicable to termination cases through the Adoption Code, [MCL 710.21 *et seq.*; MSA 27.3178(555.21) *et seq.*]."

lock for purposes of determining if a putative father's parental rights should be terminated under subsection 39(1) of the Adoption Code, MCL 710.39(1); MSA 27.3178(555.39)(1). This Court in *In re Schejbal*, 131 Mich App 833, 835-836; 346 NW2d 597 (1984), relied on *In re Barlow* in holding that the best interests factors of the Child Custody Act would also be "relevant" to the type of parental rights termination proceeding at hand. MCL 712A.19b(5); MSA 27.3178(598.19b)(5). However, neither *In re Barlow* nor *In re Schejbal* requires a probate court, in making the decision whether to terminate parental rights, to specifically address and evaluate each of the statutory best interests factors contained in the Child Custody Act, MCL 722.23; MSA 25.312(3). On the contrary, "the Child Custody Act . . . is not applicable to proceedings in the juvenile division of the probate court." *In re Schejbal*, *supra* at 835. Further, a literal application of the best interests factors of the Child Custody Act would not be sensible or indeed even possible. The best interests factors of the Child Custody Act are aimed at determining which of the parties competing for custody of a child should be awarded custody in furtherance of the child's best interests.

Thus, the prototypical case under the Child Custody Act arises in a custody dispute between two parents and requires the difficult determination which of two *fit parents* should be awarded custody of their child or children. For example, factor j, MCL 722.23(j); MSA 25.312(3)(j) provides that a factor to be considered in a child custody dispute is "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent

or the child and the parents." This factor is obviously relevant in a dispute between two fit parents over which of the two will have physical custody of their child or children and which parent will have visitation rights. However, this factor is simply inapplicable in the context of a termination of parental rights where the difficult, but substantially different, question is whether the court should end the parental rights of a parent to a child. Indeed, in *In re Barlow, supra* at 236, the Michigan Supreme Court recognized that the best interests factors from the Child Custody Act could not simply be applied to the context of a termination of parental rights case:

> Since, however, cases [involving possible termination of parental rights] may arise, as does this one, not in the context of two known disputing parties, application of the best interest test to these cases will differ from evaluation of the enumerated factors in the context of a typical dispute arising under the Child Custody Act.

One might wonder, then, what the point is of the references in *In re Barlow* and *In re Schejbal* to the best interests factors of the Child Custody Act. In our view, the point was to highlight that many, if perhaps not all, of the types of concerns about parental ability underlying the best interests factors of the Child Custody Act are highly relevant to a decision concerning whether parental rights should be terminated. As stated in *In re Barlow, supra* at 236, "The Legislature has, however, set forth a number of areas of concern in [the Child Custody Act] which it deemed should be evaluated in a large category of inquiries into a child's welfare." It is readily apparent that many of the concerns implicated by the best interests factors of the Child Custody Act would also be important in the

context of a determination whether a parent has established that it would clearly not be in a child's best interests that parental rights be terminated.[2]

In sum, lest there be any doubt, we unequivocally hold that in determining whether a parent has shown that termination of parental rights is not in the "best interests" of a child under MCL 712A.19b(5); MSA 27.3178(598.19b)(5),[3] a probate court is not bound to make findings with regard to the best interests factors of the Child Custody Act, MCL 722.23; MSA 25.312(3). However, as indicated above, it is entirely appropriate for a probate court to consider many of the concerns underlying those best interests factors in deciding whether to terminate parental rights. Further, while having no obligation to do so, it is per-

---

[2] Such concerns include the following: the love and emotional ties actually existing between a parent and child (factor a); the ability to provide for the material needs of the child (factor c); the moral fitness of a parent (factor f); the mental and physical health of a parent (factor g); the reasonable preference regarding custody of a child considered by the lower court to be old enough to express a preference (factor i); and whether a child has in the past or is likely in the future to be subjected to domestic violence in the parent's home (factor k).

[3] We note that *In re Barlow* and *In re Schejbal* were decided before the enactment of MCL 712A.19b(5); MSA 27.3178(598.19b)(5). As noted above, before the enactment of this provision, the decision whether to terminate parental rights after a finding of one or more statutory grounds for termination was in the discretion of the probate court. *See In re Hall-Smith, supra* at 471. In contrast, as set forth above, under MCL 712A.19b(5); MSA 27.3178(598.19b)(5), the decision whether to terminate parental rights is no longer committed to the discretion of the probate court but rather is mandatory upon a finding of a statutory ground for termination unless the involved parent establishes to the probate court that termination is clearly not in the child's best interests. See *In re Hall-Smith, supra* at 472-473. Nevertheless, the change in the nature of the ultimate decision whether to terminate parental rights effected by MCL 712A.19b(5); MSA 27.3178(598.19b)(5) is not pertinent to our analysis. Even when the termination decision was discretionary with the probate court, there was no requirement that the probate court make findings with regard to the best interests factors of the Child Custody Act.

fectly appropriate for a probate court to refer directly to pertinent best interests factors in the Child Custody Act in making a determination concerning whether a parent has established that termination of parental rights is clearly not in a child's best interests.

Here, the probate court had already found statutory grounds for termination, which established respondent's inability to provide proper care for the children within a reasonable time, before it made the additional findings regarding the best interests of the children. In light of the evidence of respondent's failure to properly care for the minor children, her abuse of alcohol, and other negative factors, the probate court did not clearly err, *In re Hall-Smith, supra* at 472, by finding that respondent had failed to establish that termination of her parental rights was clearly not in the minor children's best interests.

Having reviewed the record before us and having considered respondent's arguments, we find no basis for concluding that the probate court erred in its decision to terminate her parental rights.

Affirmed.