*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re LOPEZ, Minors.

UNPUBLISHED
November 21, 2023

No. 366005
Ottawa Circuit Court
Family Division
LC No. 2017-085698-NA

Before: LETICA, P.J., and BORRELLO and RICK, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court order terminating his parental rights to the minor children, AFL, AAL, and AJL, under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist). Father's sole argument on appeal is that the trial court erred by determining that there was sufficient evidence to support the finding that statutory grounds supported termination of his parental rights.[1] We affirm.

## I. FACTUAL BACKGROUND

This case arises out of a petition from the Ottawa County Department of Health and Human Services (DHHS) for the termination of father's parental rights.[2] Father is the legal father of AFL on the basis of an executed affidavit of parentage. He is the putative father of AAL and AJL. The petition indicated that father had multiple convictions for selling marijuana, a history of substance abuse, and that he had not provided for the care and maintenance of the children. Specifically,

---

[1] Father does not challenge the trial court's best-interest determination. As such, we may presume that the trial court did not clearly err by finding that termination was in the children's best interests by a preponderance of the evidence. See *In re JS & SM*, 231 Mich App 92, 98-99; 585 NW2d 326 (1998), overruled in part on other grounds *In re Trejo*, 462 Mich 341, 353; 612 NW2d 407 (2000). Even if this were not the case, having reviewed the record, we would conclude that the trial court did not clearly err by finding that termination was in the children's best interests.

[2] The petition also contained allegations against the children's mother, whose parental rights were voluntarily terminated along with father's parental rights. Mother does not participate in this appeal.

when father learned that the children were removed from mother's care while mother was living in California, "he did not take actions to secure custody of the children and refused to agree to a guardianship."

Over the course of the proceedings, the DHHS attempted to provide services to father, whose primary residence is in Texas. At a dispositional hearing, foster-care caseworker Kyle Gilmore informed the trial court that father was late to begin his participation, but had more recently been "very communicative" and "very consistent with parenting time." Gilmore explained that father was looking for parenting classes, counseling, and other services in Texas and was on the waitlist with Catholic Charities. Gilmore further testified that they were scheduling various in-person visitations with the children and that he was going to have father complete some services in Michigan, including a psychological evaluation and substance-abuse assessment, so that he would not have to pay for the services in Texas.

At a permanency planning hearing, Gilmore explained that an Interstate Compact on the Placement of Children (ICPC) referral was made in Texas. Gilmore indicated that father was making good progress and that placement in Texas was being considered if father's progress continued. Gilmore explained that father traveled to Michigan in July for face-to-face visitation with the children, and remained in the state for four to five days. Father visited the children at least four times, and the visits went very well. Father brought his wife to the visits, and his wife interacted well with the children; father was "fully engaged" and involved in the activities. Father completed a psychological evaluation, a drug screen, and a substance-abuse evaluation during his short visit. Father tested positive for marijuana at that time.

Gilmore further explained that father had an open Children's Protective Services (CPS) case in Texas that involved services for father, and that father had tested positive for marijuana during the pendency of that case as well. According to Gilmore, the Texas CPS case was "about to be closed[.]" Texas CPS officials found that father's home "is very safe and appropriate." Gilmore explained that father had a son in Texas and that the school expressed concerns regarding "a little mark" on his son, which allegedly was the result of father and son roughhousing and boxing together. Father was attending counseling and parenting classes in Texas with Catholic Charities and Just for Dads. At that point, father was transitioned to unsupervised visits, both virtual and in-person.

The next permanency planning hearing occurred in December 2022. DHHS foster-care specialist Alyson McNabb informed the trial court that father continued to reside in Texas and that he had an in-person, unsupervised visit with the children in September. At the visit, father tested positive for methamphetamine. He again tested positive for methamphetamine upon his return to Texas in October, and then tested positive for marijuana in November. McNabb requested that father's parenting time be switched to supervised parenting time if he were to return to Michigan to visit the children, but maintained that father's virtual visitations could remain unsupervised. McNabb further explained that father had been involved with his caseworker in Texas for approximately six months, but had minimal updates from the caseworker except for father's positive drug screens. McNabb explained that father was offered services through Catholic Charities in Texas and that he was "dropped from the service from the agency due to noncompliance." McNabb explained that father was participating in an online parenting class through an agency called Arbor Circle, but she was unaware if father completed the program

because of the lack of communication with the caseworker in Texas. McNabb then requested that a termination petition be filed on the basis of her concern for the children's permanency. DHHS argued for a dual goal of both adoption and reunification.

Father's counsel explained that father had completed his Just for Dads parenting program through Arbor Circle, that father was going to biweekly counseling sessions at Mindful Innovations, and that father had had negative drug screens, except for marijuana, since October. Father's counsel explained that he had had difficulty with the timeliness of his virtual visitations because the link was sent to him at the last minute. Father's ongoing CPS case in Texas had not been closed, but he was progressing toward reunification. Father's counsel requested that the reunification case remain open for an additional 90 days to resolve the disconnect between father's Texas and Michigan CPS caseworkers. At the close of the hearing, the trial court granted petitioner's request for a dual goal of adoption and reunification.

At a review hearing on February 24, 2023, Gilmore provided an update and explained that father remained in Texas and had been participating but had made minimal progress since the last review hearing. Gilmore explained that they were still waiting on the ICPC; however, he was made aware that there was a shortage of caseworkers in Texas, so it still had not been assigned. Therefore, DHHS had been unable to obtain a home study of father's home in Texas. Father's Texas CPS case remained open, through which father was ordered services, and father had completed his substance-abuse class for his Michigan CPS case. Gilmore explained that father had tested positive only for marijuana since the last review hearing. This was concerning to Gilmore because marijuana was illegal in Texas. Gilmore explained that, besides the substance-abuse class, father had not followed any of the recommendations that resulted from his substance-abuse assessment. Father refused a drug screen on February 5, 2023.

A supplemental petition for termination of father's parental rights was ultimately filed in this case. The petition recognized father as AFL's legal father but indicated that AAL and AJL had no legal father under Michigan law. The petition alleged that services were offered to father, but father failed to substantially benefit from the services. The petition indicated that father's "current barriers include lack of parenting skills, positive drug screens for methamphetamine, noncompliance with parenting class and counseling, and failure to exercise regular parenting time." Termination was requested under MCL 712A.19b(3)(c)(*i*), (3)(g), and (3)(j).

At the termination hearing, Gilmore testified that he was assigned to the case immediately following the initial removal of the children in November 2021. Father was deemed the legal father of AFL by an affidavit of parentage, but Gilmore explained that father was identified only as the putative father of AAL and AJL. Gilmore explained that father was instructed regarding how to establish paternity of AAL and AJL on several occasions, and Gilmore offered to bring the form to father for him to sign. Gilmore testified that father had several barriers at the start of the case, including substance abuse, parenting issues, and an overall inability to provide for his children on the basis of his residence in Texas. Father was referred to parenting classes in which he participated, but eventually, father was terminated because of lack of attendance. Gilmore explained that California CPS contacted father after the children were removed from their mother's custody in that state, and that he eventually was able to connect with father "a couple weeks after removal" because of alleged "phone issues." Father did nothing to establish a legal relationship with AAL and AJL at that time.

During parenting time visits, father seemed "unsure of what to do" and would rely on his wife to entertain the children. At some point, father had unsupervised visits, and the visits "went very, very poorly." In July, father tested positive for methamphetamine on the same day as one of his visits; father would show up late; and father had communication difficulties. Additionally, father attended visitation without certain supplies or car seats. Father had to purchase new car seats on the day of one of the visits, and Gilmore had to install them into the vehicle. During father's visits, it was alleged that father's vehicle "smelled of marijuana very, very heavily." Gilmore explained that father did not have a driver's license and that his wife transported him to his visits.

Regarding substance use, father's drug screens were mostly positive for marijuana, and two tests on September 14, 2022, and October 4, 2022, were positive for methamphetamine. Gilmore expressed his concerns about father's marijuana use and father's vehicle smelling like marijuana directly with father and his concerns about marijuana still being illegal in Texas. Gilmore explained that father exhibited a lack of judgment regarding his drug-screen refusals. Father admitted to using marijuana in Texas the day before the termination hearing, in violation of Texas law.

The trial court determined that the prosecution provided sufficient evidence solely under MCL 712A.19(3)(c)(*i*), explaining that the children had been in the care of the DHHS for "a year-and-a-half or more" and that the conditions that led to father's adjudication continued to exist, including father's substance abuse and parenting issues. The trial court explained that, considering the children's ages, the services provided, and father's lack of compliance with those services, father would not be able to provide safety and stability to the children within a reasonable time.

The court also addressed MCL 712A.19(3)(g) (failure to provide proper care and custody) and (j) (child will be harmed if returned to parent). As to subsection (3)(g), the trial court expressed concerns that there had never been clear information provided by father to the DHHS regarding his employment and finances. The trial court emphasized that father stated that he was employed and that he could provide for his children; however, father had not provided financial support for "a long, long time." Nevertheless, because of the uncertainty regarding father's employment and financial situation, the trial court determined that this statutory ground was not proven by clear and convincing evidence. As to subsection (3)(j), the trial court explained that the main issue under this statutory ground was father's use of marijuana, but that the trial court did not see the connection between father's use of marijuana and clear and convincing proof that there was a likelihood that the children would be harmed. The trial court explained that harm may be inferred, but did not find that inference to be the clear and convincing evidence necessary for his finding.

The court went on to find that termination was in the children's best interests because there was no bond between father and the children. The court noted that father's failure to prioritize the children was very damaging to them, and that AFL was particularly hurt by father's actions. The trial court focused on the children's sibling bond and how the children should not be separated. The trial court further explained,

> So, in terms of viewing the kids independently, which I'm supposed to do, I look at [AFL] having a little strong bond and a reason potentially not to terminate, but I do think termination is appropriate for her. I think [AAL] is kind of in the middle

-4-

of that, maybe a little toward not much of a bond with dad, so not much mitigating against termination. [AJL] there's no bond, and there's no reason to consider not terminating with regard to [AJL]. But a sibling bond is important, you know, it's important for all three of them. And I think that with regard to the other—in addition to the other best interest factors I have considered here, support terminating his parental rights.

Subsequently, the trial court terminated father's parental rights to all three children. This appeal followed.

## II. ANALYSIS

Father argues that his parental rights should not have been terminated because insufficient evidence was presented to support termination under MCL 712A.19b(3)(c)(*i*). We disagree.

We review "for clear error both the court's decision that a ground for termination has been proven by clear and convincing evidence and . . . the court's decision regarding the child's best interest." *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013).

Under MCL 712A.19b(3)(c)(*i*), the trial court may terminate a parent's parental rights if it finds, by clear and convincing evidence, that the conditions that led to the adjudication continued to exist and that there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age. When considering MCL 712A.19b(3)(c)(*i*), this Court has previously held that termination was proper when "the totality of the evidence amply support[ed] that [the respondent] had not accomplished any meaningful change in the conditions" that led to adjudication. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009).

In this case, father's initial dispositional order was entered in May 2022. The termination hearing was held in April 2023. Therefore, "182 or more days [had] lapsed since the issuance of an initial dispositional order." See MCL 712A.19b(3)(c). According to the amended petition, the conditions that led to father's adjudication were a conviction for the possession of marijuana for sale, a history of substance abuse, and an inability to provide for the proper care and maintenance of the children. At the termination hearing, the trial court specified that the conditions that led to father's adjudication were "substance abuse, parenting issues, some question about housing at that time." The trial court explained that the DHHS provided services with regard to substance abuse, parenting skills, and counseling, emphasizing that father was referred to counseling to address some anger issues that DHHS believed he needed to work through.

Addressing both father's criminal conviction for possession of marijuana for sale and his substance-abuse history, the trial court was presented with evidence that father tested positive for marijuana throughout the entire duration of the case. Termination of a respondent's parental rights under MCL 712A.19b(3)(c)(*i*) on the basis of marijuana use is only proper when there was evidence "demonstrating that the parent's acts are actually harming or presenting an articulable risk of harm to the child." *In re Richardson*, 329 Mich App 232, 255; 961 NW2d 499 (2019).

This Court explained that "the trial court cannot simply presume a risk of harm from its own prior experiences or personal disapproval of a parent's choices." *Id*. However, father's marijuana use was only one factor that the trial court had to consider. In addition to father's positive tests for marijuana, father tested positive for methamphetamine twice and was under the influence of methamphetamine for one of three in-person visitations with his children. Evidence from both the DHHS and the foster placement was presented that father's vehicle smelled like marijuana and that the children's clothes smelled of marijuana. Additionally, father openly admitted that he regularly used marijuana, despite the knowledge that it was illegal in the state of Texas and that he was committing a crime by using it in Texas.

Most importantly, evidence was presented alleging that father would frequently drive under the influence of marijuana, which was an ongoing concern for his caseworker in Texas. Father also prioritized using his Michigan trips to obtain marijuana. Father testified that he was unable to see the children in-person more than three times because of the expense involved with traveling from Texas to Michigan, while also admitting that he would purchase medical marijuana during his trips to Michigan. Additionally, father refused to provide a drug screen in the months leading up to the termination hearing, which was treated as a positive drug test per DHHS policy. These issues provided sufficient evidence to show that father's relationship with marijuana and substance use had not changed for the better over the course of the proceedings. Further, father's substance abuse presented an articulable risk of harm to the children. Specifically, father's substance use placed the children at risk of coming into police contact, if father were ever to be caught using marijuana in Texas, and placed them at risk of physical harm if father were to drive while under the influence of marijuana.

There was also sufficient evidence that father remained unable to provide proper care and maintenance of the children at the time of the termination hearing. "[A] parent's failure to comply with the parent-agency agreement is evidence of a parent's failure to provide proper care and custody for the child." *In re Trejo*, 462 Mich at 360-363. Additionally, "the parent's *compliance* with the parent-agency agreement is evidence of [his] ability to provide proper care and custody." *In re JK*, 468 Mich 202, 214; 661 NW2d 216 (2003). Father was referred to parenting classes, counseling, and drug screening during the case. He was terminated from his first in-person parenting program on the basis of lack of attendance. Father failed to complete his second parenting program, despite it being a virtual program, also on the basis of lack of attendance. Accordingly, at the time of the termination hearing, father had not successfully completed a parenting-skills program.

Although father successfully completed a substance-abuse assessment and psychological evaluation, he failed to attend any sort of counseling that was recommended as a result of these assessments, despite having arrangements made for him by the caseworker in Michigan. Father adamantly denied that he had a history of anger issues and blamed the trial court for his anger and frustration. However, evidence was presented that father would become frustrated during his visitations with the children and would abruptly end visits because of his frustration. Despite these issues, father chose not to utilize the counseling that he was referred to and denied that he had any additional issues to work on to regain custody of his children.

The record is rife with additional evidence of father's noncompliance, including his lack of participation in the beginning stages of the case, a failure to establish legal paternity of two of

his children, a failure to provide employment and financial information to the DHHS upon request, declining to provide financial support for his children despite being gainfully employed, and finally, an apparent inability to maintain minimal contact with his children despite encouragement to visit the children as much as possible. Father chose not to participate in the case service plan contrary to multiple warnings from DHHS staff members and directly by the trial court that participation was crucial to his success and that he needed to fully comply with the case service plan. Accordingly, on the basis of father's noncompliance with the case service plan, there was sufficient evidence that he was unable to provide proper care and custody of his children at the time of the termination hearing. See *In re Trejo*, 462 Mich at 359-360. The trial court therefore did not err by finding that statutory grounds existed to support termination of father's parental rights under MCL 712A.19b(3)(c)(*i*).

Affirmed.

/s/ Anica Letica
/s/ Stephen L. Borrello
/s/ Michelle M. Rick