*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* FRANCO-RONEY, Minors.

UNPUBLISHED
July 01, 2025
2:11 PM

No. 371897
Jackson Circuit Court
Family Division
LC No. 22-001900-NA

Before: BORRELLO, P.J., and RIORDAN and PATEL, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court order terminating his parental rights to the minor children under MCL 712A.19b(3)(c) (harmful conditions continue to exist), and MCL 712A.19b(3)(j) (reasonable likelihood that children will be harmed if returned to the parent). On appeal, respondent argues that the trial court clearly erred by finding that termination was in the children's best interests. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

In the case at hand, respondent, identified as the biological father of the minor children and the former partner of the children's mother, presents a history of domestic violence towards the mother. On March 15, 2022, while entrusted with the care of the children during the mother's absence for work, an incident occurred in which one of the children sustained significant injuries, specifically multiple fractured ribs and bone bruises, as confirmed by hospital x-rays.

Respondent admitted responsibility for the harm inflicted on the minor child in a communication to the children's mother via text that he had "squeezed the baby too hard." This incident underscored the immediate risk to the minor children's safety and in the opinion of the trial court, highlighted the need for a critical reassessment of parental rights considering respondent's documented history with Children's Protective Services (CPS) and law enforcement. As a result, a petition was initiated in April 2022 aimed at terminating the respondent's parental rights, to safeguard the welfare of the minor children involved.

In November 2022, an amended petition was filed to include another altercation between respondent and the children's mother that had occurred on October 31, 2022. Respondent went to the mother's house, grabbed her, pulled her outside, threw her to the ground, broke her phone, and slashed her vehicle's tires. The minor children were present. The children's mother did not know that respondent would be at her home; shortly thereafter, she secured a personal protection order (PPO) against respondent.

On May 2, 2023, respondent admitted to harming one of the children whose ribs were broken, and he admitted that he had been involved in CPS and police investigations. In exchange for his admission, petitioner moved to amend the petition to be a temporary request. After accepting respondent's plea, the trial court ordered respondent to attend supervised parenting time, complete a parenting education class, participate in a psychological evaluation, and follow all recommendations provided after the evaluation. The trial court also ordered that the children remain with their mother.

Over the next several months, respondent completed a psychological evaluation but did not follow the recommended mental-health services. He also did not enroll in parenting classes. He attended parenting time, but by the end of September 2023, respondent stopped attending because of transportation difficulties. Despite being offered bus passes to attend, respondent did not go to parenting time after September.

On January 20, 2024, respondent violated the PPO against him by entering the mother's home, locating her in her bedroom, "dragging [her] downstairs by her hair," and striking her with his feet and hands. He also threatened to kill her if she contacted law enforcement. The children's mother "sustained significant bruises on her upper right torso and cut marks on the right side of her cheekbone." Respondent eventually left, after which police came and documented the domestic-violence incident. The police report noted that the children did not witness the incident because they were asleep upstairs. Respondent was charged with "domestic violence, home invasion, aggravated stalking, and assault with intent to do bodily harm."

In January 2024, a petition was filed to change the temporary nature of the proceedings to a permanent pursuit of terminating respondent's parental rights. By the termination hearing in May 2024, CPS workers testified that respondent still had not participated in any services aside from completing the psychological evaluation. Respondent had not seen the children since September 2023, and he demonstrated a pattern of domestic violence throughout the proceedings. Because over 182 days had passed since adjudication, the conditions concerning respondent's parenting skills had not improved, and domestic violence was a pressing concern, the trial court found that there were statutory grounds to terminate respondent's parental rights. The trial court also considered the children's young ages, their bond with respondent, and their need for permanency both now and in the future, to find that termination was in the children's best interests.

Respondent now appeals.

II. ANALYSIS

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proven by clear and convincing evidence."

*In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (quotation marks and citation omitted).[1] "[O]nce a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). "The trial court's best-interest determination is . . . reviewed for clear error." *In re Pederson*, 331 Mich App at 476. "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made . . . ." *Id*. at 472 (quotation marks and citation omitted).

### III. BEST INTERESTS

Respondent argues that the trial court failed to consider the children's placement with their mother as a relative-placement factor that weighed against termination of respondent's parental rights. Respondent's claim lacks merit.

A trial court considers several factors to determine whether termination of parental rights is in the children's best interests; these factors include "the child's bond to the parent[;] the parent's parenting ability[;] the child's need for permanency, stability, and finality[;] and the advantages of a foster home over the parent's home . . . ." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015) (quotation marks and citation omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's wellbeing while in care, and the possibility of adoption." *In re Rippy*, 330 Mich App 350, 360-361; 948 NW2d 131 (2019) (quotation marks and citations omitted). "A child's placement with relatives is a factor that the trial court is required to consider." *In re Gonzales/Martinez*, 310 Mich App at 434. "Generally, a child's placement with relatives weighs against termination . . . ." *Id*. (quotation marks and citation omitted).

---

[1] Respondent does not challenge the trial court's findings regarding statutory grounds, As such, we may presume that the trial court did not clearly err by finding that the unchallenged statutory grounds were established by clear and convincing evidence. See *In re JS & SM*, 231 Mich App 92, 98-99; 585 NW2d 326 (1998), overruled in part on other grounds *In re Trejo*, 462 Mich 341; 612 NW2d 407 (2000). Nevertheless, having reviewed the record, we hold that the trial court did not clearly err by finding statutory grounds for termination. With respect to MCL 712A.19b(3)(c)(*i*), the trial court properly found that, given the children's ages, respondent did not demonstrate a reasonable likelihood of rectifying the conditions that prompted adjudication in a reasonable amount of time. See *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). Given the children's ages and the domestic violence, the trial court properly found that termination of respondent's parental rights was supported under MCL 712A.19b(3)(c)(*ii*). See *In re Jackisch/Stamm-Jackisch*, 340 Mich App 326, 334; 985 NW2d 912 (2022). And with regard to MCL 712A.19b(3)(j), the trial court properly found that because of respondent's lack of compliance with services, there was a reasonable likelihood, on the basis of respondent's conduct or capacity, that the children would be harmed if returned to his home. See *In re Pederson*, 331 Mich App at 473.

The Michigan Legislature recently amended MCL 712A.13a(1)(j) in 2022, which provides the definition of "relative" for placement purposes as follows:

> (j) "Relative" means an individual who is at least 18 years of age and is either of the following:
>
> (*i*) Related to the child within the fifth degree by blood, marriage, or adoption, including the spouse of an individual related to the child within the fifth degree, even after the marriage has ended by death or divorce, the parent who shares custody of a half-sibling, and the parent of a man whom the court has found probable cause to believe is the putative father if there is no man with legally established rights to the child.
>
> (*ii*) Not related to a child within the fifth degree by blood, marriage, or adoption but who has a strong positive emotional tie or role in the child's life or the child's parent's life if the child is an infant, as determined by the department or, if the child is an Indian child, as determined solely by the Indian child's tribe. As used in this section, "Indian child" and "Indian child's tribe" mean those terms as defined in section 3 of chapter XIIB. [2022 PA 200.]

The Michigan Adoption Code—a different chapter of the Probate Code of 1939—expressly defines the language "within the fifth degree of blood" as including a parent. MCL 710.22(y). Specifically, MCL 710.22(y) provides as follows:

> 'Within the fifth degree by marriage, blood, or adoption' means any of the following relationships: *parent*, step-parent, grandparent, step-grandparent, brother, step-brother, sister, step-sister, uncle, step-uncle, aunt, step-aunt, first cousin, step-first cousin, great aunt, step-great aunt, great uncle, step-great uncle, great grandparent, step-great grandparent, first cousin once removed, step-first cousin once removed, great great grandparent, step-great great grandparent, great great uncle, step-great great uncle, great great aunt, step-great great aunt, great great great grandparent, or step-great great great grandparent. [Emphasis added.]

Therefore, a reasonable interpretation of the amended statute, MCL 712A.13a(1)(j), indicates that the children's placement with their biological mother in the present case constituted a relative placement. See MCL 710.22(y). Accordingly, the children's placement with their mother triggered the trial court's obligation to consider this placement as a factor weighing against termination of respondent's parental rights. See *In re Gonzales/Martinez*, 310 Mich App at 434.

The record demonstrates that the trial court considered the children's placement with their biological mother by hearing testimony about that placement and acknowledging that the children were with her when it discussed best interests and the possibility of a future adoption by a partner of their mother:

> So with respect to best interest, I think children need to have a strong father figure, role model in their lives and—and when they don't have that, I think they suffer as a result.

The problem here is [respondent] has not demonstrated that he would be that positive role model in their lives. And one benefit to termination of parental rights is that it would free these children so that they could be adopted by a step-father. I've no idea whether the mother is currently in a relationship with someone who could pose that positive influence, positive role model in these children's lives.

But even if that person isn't there today, they're very young. And I think the potential that someone could step up and fill that role is something these children ought to have the opportunity for.

A remand is appropriate if consideration of a relative placement is "*wholly* absent from the trial court's best-interests determination." *In re CJM*, ___ Mich App ___, ___; ___ NW3d ___ (2024); (Docket No. 367565); slip op at 5-6 (emphasis added). In contrast, if a trial court is aware that a child is with a biological parent and orders the child to remain with that parent, the record indicates that such considerations were not wholly absent. See *id*. Furthermore, a trial court's factual findings are sufficient if it "appears that the trial court was aware of the issues in the case and correctly applied the law, and where appellate review would not be facilitated by requiring further explanation." *Ford Motor Co v Dep't of Treasury*, 313 Mich App 572, 589; 884 NW2d 587 (2015) (quotation marks and citation omitted).

In the present case, the trial court acknowledged during its findings at the termination hearing that the children were with their biological mother; additionally, in its order terminating respondent's parental rights, the trial court ordered "[t]he children [to remain] in the care and custody of their mother." Accordingly, the record demonstrates that the trial court was aware of the relative-placement aspect in the case and correctly applied the law therein. See *id*. Additionally, a relative placement *generally* weighs against termination. *In re Gonzales/Martinez*, 310 Mich App at 434. Because a relative placement does not *always* weigh against termination, the circumstances in which a relative placement does not weigh against termination are limited but appropriate to consider. See *id*. at 434-435. The presumption behind the holding in *Olive/Metts Minors* is that a relative has a preexisting relationship with the respondent, which generally and more readily facilitates an ongoing relationship between the respondent and the child. See *Olive/Metts Minors*, 297 Mich App at 43-44. However, if the relationship between the relative and the respondent has deteriorated or is otherwise negative such that the relative does not feel safe to engage with the respondent, this placement cannot weigh against termination. *In re Gonzales/Martinez*, 310 Mich App at 435 (terminating respondent's parental rights instead of ordering a guardianship in part because the respondent's relationship with the relatives had deteriorated such that the relatives "did not feel safe around respondent and did not want to have contact with her").

Accordingly, the nature of the relationship between the relative and the respondent is implicitly relevant for this factor, and a relative placement weighs against termination insofar as the relative is safely able to support the respondent continuing to have a relationship with the child. See *id*. Given that respondent in this case repeatedly and violently abused the relative with whom the children were placed, the record demonstrates that this relative placement could not safely facilitate an ongoing relationship between respondent and the children. See *id*.

Moreover, relative placement is one of many factors that a trial court considers to determine the best interests of children. See *In re Gonzales/Martinez*, 310 Mich App at 434. A relative placement alone is not dispositive because "a trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests." *In re Atchley*, 341 Mich App 332, 347; 990 NW2d 685 (2022) (quotation marks and citation omitted). The trial court acknowledged that the children had a bond with respondent, but they had not spent time with him in eight months. See *In re Gonzales/Martinez*, 310 Mich App at 434. The trial court also considered the factor concerning the possibility of adoption in the future, noting that "their father might be able to waltz back into their lives at some point in the future, particularly after a potentially lengthy period of incarceration if that's what lies ahead, [but] these children deserve the chance to have somebody step up and be the father figure that they need" if and when that opportunity presents itself. See *In re Rippy*, 330 Mich App at 360-361. Lastly, the trial court found that the children were young and needed permanency. See *In re Gonzales/Martinez*, 310 Mich App at 434. Therefore, the trial court made an adequate best-interest analysis and did not clearly err by finding that terminating respondent's parental rights was in the children's best interests.

Affirmed.

/s/ Stephen L. Borrello
/s/ Michael J. Riordan
/s/ Sima G. Patel