*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* K. T. MCGEE, Minor.

UNPUBLISHED
February 17, 2026
12:00 PM

No. 375171
Wayne Circuit Court
Family Division
LC No. 2022-000903-NA

Before: RICK, P.J., and YATES and MARIANI, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating her parental rights to the minor child, KM, pursuant to MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (failure to rectify other conditions), and (j) (reasonable likelihood of harm if returned to parent).[1] We affirm.

## I. BACKGROUND

In June 2022, the Department of Health and Human Services (DHHS) filed a petition requesting that the trial court take jurisdiction over KM and remove him from respondent's care. DHHS alleged that respondent had unstable housing and was abusing substances, inadequately treating her mental-health issues, and providing improper supervision for KM. DHHS alleged that in April 2022, respondent was arrested and criminally charged for operating a vehicle while intoxicated (OWI) with then-six-month-old KM in the car. DHHS also alleged that respondent admitted to a Children's Protective Services (CPS) investigator during their subsequent investigation that she had housing issues. DHHS further alleged that respondent's parental rights to her two other children, TW and DW, had previously been terminated in February 2015 due to respondent's failure to rectify the conditions that led to the children's removal in December 2012, which included improper supervision, inadequately treated mental-health issues, and unstable

---

[1] The order also terminated the parental rights of KM's father, who is not involved in this appeal.

housing.[2]  Following a preliminary hearing, the trial court authorized the petition, removed KM from respondent's care, and granted respondent supervised parenting time.[3]

In September 2022, respondent pleaded to the allegations in the petition and to the trial court's exercise of jurisdiction.[4]  At the initial dispositional hearing, the court ordered respondent to comply with a case service plan provided by DHHS, which required respondent to participate in and benefit from offered services to address her housing issues, substance-abuse issues, mental-health concerns, and poor parenting skills.  Throughout the proceedings, respondent struggled to demonstrate any progress on her case service plan, and in March 2024, DHHS filed a supplemental petition requesting termination of respondent's parental rights.  Following a termination hearing in January 2025,[5] the trial court found that clear and convincing evidence established grounds for termination of respondent's parental rights and that a preponderance of the evidence established that termination was in KM's best interests.  The trial court thereafter issued an order terminating respondent's parental rights as previously described.  This appeal followed.

## II.  NOTICE AND SERVICE OF PROCESS

On appeal, respondent argues that she did not attend—and was therefore unable to meaningfully participate in—the termination hearing because she received inadequate notice and corresponding service of process of that hearing, and the trial court erred by concluding otherwise.  While respondent does not expressly say as much, it is clear from the substance of this argument that she is asserting a violation of her procedural due-process rights.  "Whether child protective proceedings complied with a parent's right to procedural due process presents a question of constitutional law, which we review de novo." *In re Sanders*, 495 Mich 394, 403-404; 852 NW2d 524 (2014).  "De novo review means we review this issue independently, with no required deference to the courts below." *In re Ferranti*, 504 Mich 1, 14; 934 NW2d 610 (2019).

In child-protective proceedings, written notice of the termination hearing must be provided to a respondent-parent "at least 14 days before the hearing."  MCR 3.920(D)(3)(b); see also MCL 712A.19b(2)(c); MCR 3.977(C)(1).  A respondent-parent is also entitled to personal service of the summons.  MCL 712A.12; MCR 3.920(B)(2)(b) and (B)(4)(a).  If, however, the trial court determines that "personal service . . . is impracticable or cannot be achieved," the court may direct alternative service "in any manner reasonably calculated to give notice of the proceedings and an opportunity to be heard[.]"  MCR 3.920(B)(4)(b); see also MCL 712A.13; *In re Lovitt*, ___ Mich App ___, ___; ___ NW3d___ (2024) (Docket No. 367124); slip op at 3.  Alternative service

---

[2] In the midst of these proceedings, respondent also gave birth to another child, DR, who unfortunately passed away shortly after his birth.

[3] The trial court initially suspended respondent's parenting time, as it did not believe at that time that any parenting time was in KM's best interests, but following a pretrial hearing approximately one month later, the court granted respondent weekly supervised parenting time.

[4] DHHS sought termination of respondent's parental rights at initial disposition in its original petition, but in exchange for respondent's plea, DHHS agreed to proceed with a case service plan.

[5] As discussed more thoroughly below, respondent was not present during the termination hearing.

includes "service by registered mail addressed to [the respondent's] last known addresses, or by publication thereof, or both[.]" MCL 712A.13; see also MCR 3.920(B)(4)(b). To be deemed sufficient, personal service of the summons must be "effected at least 72 hours before the date of [the] hearing," whereas service via registered mail must be "mailed at least 5 days before the date of [the] hearing if within the state," and service via publication must be "made once in some newspaper printed and circulated in the county in which said court is located at least 1 week before the time fixed in the summons or notice for the hearing." MCL 712A.13.

Early on in this case, the trial court ordered that all methods of service—personal, registered mail, and publication—be used to provide respondent documents and notify her of upcoming hearings, as the court had determined that she lived a very "transient" lifestyle and was often difficult to serve. Consistent with this, after DHHS filed its supplemental petition requesting termination on March 8, 2024, all three forms of service were used to serve a summons, a notice of the termination hearing, and a copy of the supplemental petition. As the proceedings continued, respondent, at the court's request, repeatedly confirmed her current address to be used for service, and all three forms of service were continually used to notify respondent of upcoming hearings, which she attended. At a combined dispositional review and permanency planning hearing on October 17, 2024, respondent was personally served another copy of the supplemental petition and a notice of the termination hearing, and the court again ordered that all three forms of service be used to notify respondent of the upcoming termination hearing, which, according to the corresponding order, had been set to occur on February 14, 2025.

Respondent asserts that she did not attend the termination hearing because at some point after the October 17, 2024 hearing, the date of the termination hearing was changed from February 14, 2025, to January 29, 2025, and she was never apprised of this. Specifically, respondent asserts that she never received proper notice and service of this date change as required by the relevant statutes and court rules. The record, however, belies this claim.

On January 8, 2025, a new summons, notice of hearing, and "ready for trial" document—all of which stated that the termination hearing was set to take place on January 29, 2025—were sent via registered mail to the address respondent had expressly told the court was her current address for purposes of service. A summons dated January 8, 2025, also indicates that respondent was personally served on that day. The new date for the termination hearing was also published in the Detroit Legal News on January 2, 2025, and the court received an affidavit confirming that publication on January 15, 2025. The publication similarly informed respondent that she was required to personally appear in court on January 29, 2025, for the termination hearing and notified her that the hearing "may result in the termination of [her] parental rights." And the register of actions, for its part, indicates that respondent was served a summons and notice of the new termination hearing date via publication, registered mail, and personal service by January 8, 2025.

It is thus readily apparent that respondent was provided written notice of the new date of the termination hearing within the time frames required by statute and court rule. See MCL 712A.13; MCR 3.920(B)(4)(a)-(b) and (D)(3)(b). It also bears mentioning that when the court commented on respondent's absence at the start of the termination hearing, respondent's counsel informed the court that he had spoken to respondent that morning and that respondent "knew about the [termination] hearing" that afternoon. Respondent also called her counsel midway through the termination hearing, at which point counsel again confirmed with the court that respondent knew

-3-

of the hearing that day, as he had previously told her that she was required to personally appear in court for the termination hearing on that date. Accordingly, we see no error in the trial court's conclusion that respondent was properly notified of the January 29, 2025 termination hearing, and we see no grounds to conclude that respondent's procedural due-process rights were violated.

## III. TERMINATION OF RESPONDENT'S PARENTAL RIGHTS

Respondent also argues that the trial court clearly erred by finding statutory grounds for termination of her parental rights. Additionally, respondent challenges the trial court's finding that termination was in KM's best interests.

## A. STANDARDS OF REVIEW

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). We review for clear error a trial court's finding that a statutory ground for termination of parental rights has been proven by clear and convincing evidence and that termination is in a child's best interests. *In re Simpson*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368248); slip op at 3. A finding is clearly erroneous if, even if some evidence supports the finding, the reviewing court is nevertheless left with the firm and definite conviction that the lower court made a mistake. *Id*. "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). We give deference "to the special ability of the trial court to judge the credibility of witnesses." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (quotation marks and citation omitted).

## B. STATUTORY GROUNDS FOR TERMINATION

As noted, respondent argues that the trial court clearly erred by finding statutory grounds for termination of her parental rights. On appeal, however, respondent has raised no challenge to the trial court's findings regarding MCL 712A.19b(3)(j).[6] Instead, respondent argues only that the

---

[6] Nor, for that matter, do we see grounds in the record for a challenge to the trial court's findings under subsection (j). There was a significant amount of testimony presented at the termination hearing that throughout the 28-month proceedings, respondent continued to abuse alcohol, did not participate in parenting classes, did not obtain appropriate housing, minimally participated in mental-health services, largely failed to participate in parenting time with KM, and had shown up to several parenting times visibly intoxicated. Thus, there was ample evidence in the record to support the trial court's finding that there was "a reasonable likelihood, based on the conduct or capacity of [respondent], that [KM] w[ould] be harmed" if returned to respondent. MCL 712A.19b(3)(j); see also *In re White*, 303 Mich App 701, 711; 846 NW2d 61 (2014) (noting that "a parent's failure to comply with . . . her service plan is evidence that the child will be harmed if returned to the parent's home").

-4-

trial court clearly erred by finding that DHHS established statutory grounds for termination under subdivisions (c)(*i*) and (c)(*ii*) by clear and convincing evidence. Because only one statutory ground must be established by clear and convincing evidence to terminate parental rights, *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011), respondent's failure to challenge the trial court's findings under subsection (j) precludes appellate relief for this issue, see *In re JS & SM*, 231 Mich App 92, 98-99, 585 NW2d 326 (1998), overruled in part on other grounds by *In re Trejo Minors*, 462 Mich 341, 353 n 10; 612 NW2d 407 (2000).[7]

## C. BEST-INTERESTS DETERMINATION

Finally, respondent argues the trial court erred by finding that termination was in KM's best interests. We disagree.

When determining whether termination is in a child's best interests, the court should place its "focus on the child rather than the parent." *In re Mota*, 334 Mich App 300, 321; 964 NW2d 881 (2020). "The trial court should weigh all the evidence available to determine the child's best interests," and it should consider a variety of factors, including "the child's bond to the parent; the parent's parenting ability; the child's need for permanency, stability, and finality; and the advantages of a foster home over the parent's home." *In re Simpson*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368248); slip op at 5 (cleaned up). "Other factors that the court may consider include the parent's history, the parent's psychological evaluation, the age of the child, and a parent's substance-abuse history." *In re MJC*, 349 Mich App 42, 62; 27 NW3d 122 (2023) (citations omitted). The court may also consider the parent's ability to provide the child a safe and permanent home, "the parent's compliance with his or her case service plan, the parent's visitation history with the child, the child's well-being while in care, and the possibility of adoption," *id*. (cleaned up), as well as "how long the child was in foster care or placed with relatives, along with the likelihood that the child could be returned to the parents' home within the foreseeable future, if at all," *In re CJM*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367565); slip op at 4 (quotation marks and citation omitted). The court must also expressly consider a child's placement with a relative, which ordinarily weighs against termination. *Id*. at ___; slip op at 4.

On appeal, respondent does not challenge any specific finding made by the trial court in its best-interests determination. Rather, respondent asserts that the trial court "did not make any findings" regarding KM's best interests as required by the statutes and court rules. In making its best-interests determination, the trial court was required to "state on the record or in writing its findings of fact and conclusions of law. Brief, definite, and pertinent findings and conclusions on contested matters are sufficient." MCR 3.977(I)(1); see also MCL 712A.19b(5) (requiring a court to expressly find that termination of parental rights is in the child's best interests before terminating

---

[7] To the extent that respondent argues that her minimal participation was due to DHHS's failure to provide adequate services to address her needs, she provides no factual or legal support for this position, leaving it inadequately presented for appellate review. See *In re Warshefski*, 331 Mich App 83, 87; 951 NW2d 90 (2020). We note, however, that from what we can glean of respondent's argument, we do not see any merit to it.

parental rights); MCR 3.977(F)(1)(c) (same). Contrary to respondent's assertion on appeal, the record in this case clearly reflects that the trial court made such findings.

At the conclusion of the termination hearing, the trial court summarized the testimony and evidence relevant to both its statutory-grounds and best-interests determinations and indicated that its determinations were based on those proofs. The court found that, despite KM having been removed from respondent's care in June 2022 after she was "caught drunk driving with [KM] in the car," respondent continued to drink alcohol over the ensuing two years and was unable to participate in several parenting times because she had shown up drunk. The court also found that respondent did not participate or minimally participated in services offered to address her alcohol abuse, parenting skills, mental-health issues, and housing issues, and she failed to demonstrate any benefit from the minimal services she did participate in. The court found that respondent simply "failed to visit" KM, missing the majority of her parenting times throughout the proceedings. The court further stated that it was not "swayed or persuaded" that respondent would "come into full compliance" with her case service plan if "given more time" and that respondent "demonstrated by not visiting [KM] and failing to comply with [her] treatment plan that [she was] not going to be the one[] or d[idn't] desire to be the one[] to provide the long-term care for" KM.

The court also stated its findings in its written order terminating respondent's parental rights. Much of the court's written findings reiterated what it had already announced at the termination hearing. However, the court also mentioned several other considerations relevant to its best-interests determination, including: (1) that respondent and KM did not demonstrate any bond; (2) that as KM got older, he consistently expressed that he did not want to enter the visiting room during parenting times with respondent; (3) that KM was placed in a foster home, as no suitable relative placements were available; (4) that KM had been placed in the same foster home since his removal from respondent's care when he was approximately nine months old; (5) that KM was closely bonded to his foster parents; and (6) that KM's foster parents wished to adopt KM. The court concluded that, based on these findings, DHHS had shown by a preponderance of the evidence that termination of respondent's parental rights was in KM's best interests. It is thus clear from the record that the court made findings of fact and conclusions of law regarding its best-interests determination as it was required to do. See MCR 3.977(I)(1).

These findings are also amply supported by evidence and testimony in the record. As discussed, a significant amount of testimony was presented demonstrating that respondent failed to participate in or benefit from her case service plan, and alcohol abuse, parenting skills, stable housing, and mental health all remained issues for respondent. See *MJC*, 349 Mich App at 62. A caseworker testified that respondent had been offered parenting time twice a week, but respondent ultimately requested that her parenting time be decreased to once a week, and even then, she still frequently missed parenting times. The caseworker testified that, in total, respondent missed 96 of her 154 scheduled parenting times, and respondent could not participate in several parenting times because she had shown up drunk. The caseworker also testified that KM and respondent had demonstrated no bond during parenting times and that, as KM got older, he expressed that he did not wish to attend parenting times. KM's foster parents had also reported to the caseworker that KM was anxious before, during, and after parenting times with respondent and that KM consistently had difficulties sleeping and eating after each parenting time. Conversely, KM had clearly demonstrated a very close bond with his foster parents, with whom he had resided for over

two years since his removal at approximately nine months old. Additionally, all of KM's needs were being met in his foster home, and his foster parents expressed interest in adopting him.

In sum, the record reflects that the trial court made express findings and conclusions regarding its best-interests determination, MCR 3.977(I)(1), and properly weighed all the evidence available to it at the time it made that determination, *Simpson*, ___ Mich App at ___; slip op at 5. We see no grounds to disrupt that determination.

Affirmed.

/s/ Michelle M. Rick
/s/ Christopher P. Yates
/s/ Philip P. Mariani