*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re KEENAN, Minors.

UNPUBLISHED
November 21, 2023

No. 365905
Van Buren Circuit Court
Family Division
LC No. 20-019373-NA

Before: LETICA, P.J., and BORRELLO and RICK, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order terminating her parental rights to her two daughters under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood of harm if children returned to parent). On appeal, respondent-mother argues that the trial court clearly erred by finding that termination of her parental rights was in the children's best interests. Respondent-mother contends that the court erred because the children were in placement with a relative, because respondent-mother had demonstrated that she could parent her daughters, and because a guardianship was a better option than termination of her parental rights. We affirm.

The Department of Health and Human Services (DHHS) began working with respondent-mother and the children in November 2019 because of reports of domestic violence and problems maintaining stable housing. The children were removed on an emergency basis in October 2020 because respondent-mother and respondent-father, who is not a party to this appeal, were homeless and had moved nine times within a period of approximately two months. There were reports of domestic violence committed in front of the children. And respondent-mother and respondent-father were heavily using methamphetamine, amphetamine, heroin, and Fentanyl, placing the children at risk due to their rampant drug addiction. Indeed, respondent-father reported that he had to give respondent-mother Narcan (Naloxone) twice in one day.

The DHHS provided numerous services and aid for respondent-mother from 2019 until the termination hearing in April 2023, including substance-abuse treatment and counseling, couples counseling, housing assistance, domestic-violence classes, parenting education, gas cards, clothing, food assistance, car-repair resources, and utility assistance. After respondent-mother spent 90 days in an inpatient, substance-abuse, rehabilitation facility, she remained sober for a

period of time, and the children were returned to her care. Unfortunately, respondent-mother once again began abusing drugs, along with alcohol, while caring for the children. There were also more instances of domestic violence. Respondents received numerous notices that their utilities would be shut off, and they were ultimately evicted from their apartment for nonpayment of rent. The children were again removed from respondent-mother's custody. Until shortly before the termination hearing, respondent-mother continued to have difficulty maintaining suitable housing, began a domestic relationship with a man who had a criminal history and could not be around the children, and continued to use drugs.

Respondent-mother argues that the trial court clearly erred by finding that termination of her parental rights was in the best interests of the children. She maintains that the court erred because the children were in placement with a relative, the paternal grandmother, because respondent-mother had demonstrated for a 14-month period that she could parent her daughters, and because a guardianship was a better option than termination of her parental rights. In *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020), this Court set forth the following framework with respect to termination proceedings:

> If a trial court finds that a single statutory ground for termination has been established by clear and convincing evidence and that it has been proved by a preponderance of the evidence that termination of parental rights is in the best interests of a child, the court is mandated to terminate a respondent's parental rights to that child. This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests. A finding is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed. When applying the clear error standard in parental termination cases, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it. [Quotation marks, citations, brackets, and ellipses omitted.]

Respondent-mother does not challenge the statutory grounds for termination; therefore, the trial court's findings regarding the statutory grounds stand. See *Denhof v Challa*, 311 Mich App 499, 521; 876 NW2d 266 (2015) (stating that this Court will not grant relief when the appealing party fails to challenge the basis of a trial court's ruling); see also *In re JS & SM*, 231 Mich App 92, 98-99; 585 NW2d 326 (1998) (failure to challenge the statutory grounds amounts to abandonment of the issue and we assume that the trial court did not clearly err by finding that there was clear and convincing evidence to support the statutory grounds for termination), overruled in part on other grounds by *In re Trejo*, 462 Mich 341, 353 n 10; 612 NW2d 407 (2000). Moreover, our review of the entire record evinces that the trial court did not clearly err when it determined that there was clear and convincing evidence supporting termination of respondent-mother's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j).

In *In re Mota*, 334 Mich App at 321, this Court discussed the best-interests analysis, explaining as follows:

> With respect to a child's best interests, we focus on the child rather than the parent. In assessing a child's best interests, a trial court may consider such factors

as a child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. The trial court may also consider how long the child was in foster care or placed with relatives, along with the likelihood that the child could be returned to the parents' home within the foreseeable future, if at all. [Quotation marks, citations, and brackets omitted.]

A respondent's use of drugs can also serve as a basis to determine that termination of parental rights is in a child's best interests. See *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013).

The trial court did not clearly err by finding that termination of respondent-mother's parental rights was in the best interests of the children because, as discussed, respondent-mother continued to use drugs and did not have suitable and appropriate housing for the children even at the time of the termination hearing. The trial court acknowledged that respondent-mother had a bond with the children, noting that she visited the children regularly. The trial court also recognized that respondent-mother showed that she could be a good parent when she maintained sobriety. But, as the trial court observed, despite the bond with her children, respondent-mother was unable to remain sober and drug-free, nor did she stop fighting with respondent-father in front of the children.

The foster-care worker and guardian ad litem (GAL) agreed that the children needed permanency and stability, two things that respondent-mother was unable to provide them because of her continued drug use and inability to maintain suitable housing. Further, although respondent-mother argues that she demonstrated that she can parent the children because she took care of them for 14 months during a portion of the court proceedings, she fails to acknowledge the drug use, domestic violence, and homelessness that led to the initial removal of the children, and that, within 14 months after the children were returned to her care, the same exact problems and parenting failures arose once again.

The children received DHHS services for half of their young lives, and their only extended periods of relative calm and stability were when they were in the care of their grandmother, who intends to adopt the children. All reports indicated that the grandmother's home is safe, loving, and appropriate, that the girls are strongly bonded with her, and that they are consistently well cared for in her home. The grandmother also has a track record of keeping the girls safe and away from both respondent-mother and respondent-father when they use drugs. Moreover, the foster-care worker and GAL agreed that the grandmother provided the girls with the love, support, and stability they needed. For these reasons, the trial court did not clearly err by finding that termination of respondent-mother's parental rights was in the children's best interests.

We further disagree with respondent-mother's argument that the trial court should have established a guardianship with the grandmother instead of changing the goal to adoption and terminating respondent-mother's parental rights. Respondent-mother contends that permanency for the children could have been accomplished through a guardianship. She maintains that her fundamental liberty interest in the companionship, care, custody, and management of her children

should not have been terminated without consideration of a guardianship. Respondent-mother complains that the court never mentioned the option of a guardianship.

We first note that, during closing argument, respondent-mother did not even ask the trial court to consider a guardianship in lieu of termination. The trial court, therefore, did not discuss the possibility of a guardianship when ruling from the bench. In *In re Prepodnik*, 337 Mich App 238, 243; 975 NW2d 66 (2021), this Court stated:

> During neglect proceedings, courts are required to hold permanency planning hearings, at which "the court shall determine whether and, if applicable, when the . . . child may be placed in a legal guardianship." MCL 712A.19a(4)(c). Indeed, under MCL 712A.19a(9)(c),[1] juvenile guardianships are one of a few options available to a court *when it determines that termination of parental rights is not in the best interests of the minor child*. [Ellipsis in original; emphasis added.]

Typically, the appointment of a guardian is done in an effort to avoid termination of parental rights. *In re TK*, 306 Mich App 698, 705; 859 NW2d 208 (2014). "[T]he appointment of a guardian is only appropriate after the court has made a finding that the child cannot be safely returned to the home, yet initiating termination of parental rights is clearly not in the child's best interests." *Id.* at 707. But under any circumstance, a trial court may only appoint a guardian if "it is in the child's best interests to appoint a guardian." *Id.* (citations omitted). A guardianship may be appropriate when "an ongoing relationship with [the parent]—rather than termination—is in the children's best interests." *In re Mason*, 486 Mich 142, 169; 782 NW2d 747 (2010). "[W]hile the guardian assumes the legal duties of a parent . . ., the parent is still under many circumstances permitted to maintain a relationship with the child." *In re TK*, 306 Mich App at 705.

In this case, the trial court properly determined that it was not safe for the children to be returned to respondent-mother's care *and* that termination of her parental rights was in the children's best interests. Therefore, a guardianship would not have been appropriate. The court specifically found that respondent-mother's continued drug use, fighting with respondent-father, and inability to maintain appropriate long-term housing were not just causing instability for the children, they caused mental- and emotional-health problems for the children. One child had

---

[1] MCL 712A.19a(9)(c) provides:

> If the agency demonstrates under subsection (8) that initiating termination of parental rights to the child is clearly not in the child's best interests, or the court does not order the agency to initiate termination of parental rights to the child under subsection (8), the court shall order 1 or more of the following alternative placement plans:

> \* \* \*

> (c) Subject to subsection (11), if the court determines that it is in the child's best interests, appoint a guardian for the child, which guardianship may continue until the child is emancipated.

behavioral problems, and the other needed to undergo trauma therapy after she was again removed from respondent-mother's custody. A foster-care specialist testified that the possibility of a guardianship was not considered because the children deserved the stability and security of an adoptive placement moving forward and that an adoption would provide greater stability and security than a guardianship. We agree with this assessment. In our view, allowing respondent-mother to continue visitations and having a relationship with the children, whether or not she is maintaining her sobriety, would serve no useful purpose other than to prolong DHHS's involvement while continuing to confuse and upset the children while they are trying to move forward in an otherwise safe and secure environment.

Respondent-mother, while acknowledging that the trial court addressed and took into consideration relative placement of the children with their grandmother, argues that the placement weighed against the court's finding that termination was in the children's best interests. We disagree. In *In re Olive/Metts*, 297 Mich App 35, 43; 823 NW2d 144 (2012), this Court discussed the relevance of circumstances in which a child has been placed with a relative:

> [B]ecause a child's placement with relatives weighs against termination under MCL 712A.19a(6)(a), the fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests. Although the trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests, the fact that the children are in the care of a relative at the time of the termination hearing is an explicit factor to consider in determining whether termination was in the children's best interests. A trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal. [Quotation marks and citations omitted.]

In this case, the trial court thoughtfully discussed the subject of relative placement with the paternal grandmother, concluding "that the fact that the children are in relative placement does not outweigh the need for stability and everything else that needs to be done at this time for [the children]." Given the extensive history of abuse of controlled substances, domestic violence, and housing instability, we cannot find that the court clearly erred in its best-interests ruling simply because the children had been placed with their grandmother.

Affirmed.

/s/ Anica Letica
/s/ Stephen L. Borrello
/s/ Michelle M. Rick

-5-