*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* L. B. A. LOGAN, Minor.

UNPUBLISHED
October 14, 2025
9:32 AM

Nos. 372954 and 372955
Wayne Circuit Court
Family Division
LC No. 2020-000796-NA

Before: RICK, P.J., and MALDONADO and KOROBKIN, JJ.

PER CURIAM.

In these consolidated appeals, respondents contest the termination of their parental rights to their child LBAL.[1] The trial court terminated respondents' parental rights under MCL 712A.19b(3)(i) (parental rights to one or more siblings of the child have been terminated because of serious and chronic neglect or physical or sexual abuse, and the parent has failed to rectify the conditions that led to the prior termination of parental rights) and (j) (reasonable likelihood of harm if child returned to parent). We affirm.

## I. BACKGROUND AND FACTS

Respondents had six other children together: SNL, TDL, DJL, ZOL, NRL, and OJL. For context, respondent-father has another son, AL, a half-sibling of the six children. Respondents' parental rights to their six children were terminated in 2022. The child protective proceedings initiated by petitioner, the Department of Health and Human Services, as to respondents' six other children were previously summarized by this Court:

> The children were originally removed from respondents' care in April 2020 because of the family home's deplorable condition and lack of working utilities. . . .

---

[1] Respondent-mother and respondent-father are referred to collectively as "respondents." Respondents' appeals were consolidated. *In re Logan*, unpublished order of the Court of Appeals, entered October 30, 2024 (Docket Nos. 372954 and 372955).

[R]espondents were provided services. . . . When respondents' situation did not improve, [petitioner] filed a petition . . . seeking temporary custody of the children. . . . [R]espondents entered pleas of admission and the court acquired jurisdiction over the children. Respondents were offered treatment plans designed to address the barriers to reunification.

. . . [A]fter the adjudication, petitioner received information that two of the children, SNL and TDL, were victims of ongoing sexual abuse by respondent-father's other 16-year-old son, AL, while in respondents' care. An investigation by Child Protective Services (CPS) substantiated the allegations. In January 2022, [petitioner] filed a supplemental petition for termination of respondents' parental rights. At the termination hearing, SNL and TDL both testified that they were sexually abused by AL multiple times. They described incidents of sexual abuse against them directly, as well as observing AL commit acts of sexual abuse against the other sibling. They also described acts of sexual abuse by AL against NRL and ZOL. The children reported AL's sexual abuse to respondents, but respondents either told the children that they did not believe them or failed to do anything to prevent the abuse, and they continued to allow AL to remain in the home.

SNL testified that respondent-father's brother was allowed at the family home and touched SNL's breasts more than once. Respondent-father's brother was convicted of criminal sexual conduct for sexually assaulting another child, but he had been released on parole at the time of the termination hearing. At the hearing, respondent-father testified that he would not allow his brother to visit the family home only because it would violate the terms of his brother's parole, but that if his brother was not on parole, he would allow his brother to visit the home, but not allow him to be around the children. [*In re Logan*, unpublished per curiam opinion of the Court of Appeals, issued December 22, 2022 (Docket Nos. 361236 and 361238), pp 1-2.]

"[T]he trial court found that clear and convincing evidence established grounds for termination of respondents' parental rights under MCL 712A.19b(3)(b)(*ii*), (g), and (j), and that termination of respondents' parental rights served the children's best interests." *Id*. at 2. Respondents appealed, and this Court affirmed the trial court's termination order. *Id*. at 1-2, 9.

In December 2023, petitioner received an alert flagging LBAL's birth because of respondent-mother's previous parental terminations. After CPS interviewed respondents on the day of the child's birth and conducted a home assessment three days later, the agency placed LBAL with fictive kin. Petitioner later sought to terminate respondents' parental rights to LBAL, alleging that the child was "at risk for threatened harm of neglect based on [respondents'] treatment of [LBAL's] siblings" and that "there [was] nothing to indicate their parental fitness has improved" since then because respondents did not demonstrate that they benefited from the previous services.

The trial court found that the statutory grounds of MCL 712A.19b(3)(i) and (j) were established by clear and convincing evidence. The trial court subsequently concluded that termination was in LBAL's best interests, pointing to a lack of a bond with the child, missed parenting time visits, housing instability, lack of financial support for LBAL, and failure to

-2-

improve their parental fitness since the previous terminations. Accordingly, in October 2024, the trial court terminated respondents' parental rights. Respondents now appeal.

## II. STANDARD OF REVIEW

"A court may terminate a respondent's parental rights if one or more of the statutory grounds for termination listed in MCL 712A.19b(3) have been proven by clear and convincing evidence." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). Once a statutory ground for termination is established, the trial court must then determine whether termination is in the child's best interests. *Id*. "Best interests are determined on the basis of the preponderance of the evidence." *In re LaFrance*, 306 Mich App 713, 733; 858 NW2d 143 (2014).

"We review for clear error the trial court's determination of best interests. A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021) (quotation marks and citations omitted).

## III. ANALYSIS

Respondents assert that the trial court erred by finding that termination of their parental rights was in LBAL's best interests. We disagree.

Before a trial court may terminate parental rights, it must find that termination of parental rights is in the child's best interests. MCL 712A.19b(5). "[T]he focus at the best-interest stage has always been on the child, not the parent." *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013).

> In making its best-interest determination, the trial court may consider the whole record, including evidence introduced by any party. [T]he child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home, are all factors for the court to consider when deciding whether termination is in the best interests of the child. The trial court may also consider the child's age, inappropriate parenting techniques, and continued involvement in domestic violence. It may further consider visitation history, the parent's engaging in questionable relationships, the parent's compliance with treatment plans, the child's well-being in care, and the possibility of adoption. [*In re Sanborn*, 337 Mich App at 276-277 (quotation marks and citations omitted).]

"A child's placement with relatives is a factor that the trial court is required to consider." *In re Atchley*, 341 Mich App 332, 347; 990 NW2d 685 (2022) (quotation marks and citation omitted). Under MCL 712A.13a(1)(j)(*ii*), the definition of a relative accounts for fictive kin: an adult who is "[n]ot related to a child within the fifth degree by blood, marriage, or adoption but who has a strong positive emotional tie or role in the child's life or the child's parent's life if the child is an infant, [or] as determined by the department . . . ." "Placement with a relative weighs against termination, but that fact is not dispositive given that a trial court may terminate parental

-3-

rights in lieu of placement with relatives if it finds that termination is in the child's best interests[.]" *In re Atchley*, 341 Mich App at 347 (quotation marks and citation omitted).

Here, the trial court did not clearly err by finding by a preponderance of the evidence that termination of respondents' parental rights was in the child's best interests. Regarding the bond between LBAL and respondents, the foster care caseworker testified that the child did not recognize respondent-mother as her mother, and, at the last few parenting time sessions, LBAL cried frequently, and respondent-mother had difficulty consoling the child without the caregiver. Although respondent-father behaved appropriately in front of the child, the caseworker testified that there was "no bond" between him and LBAL, that he was not "as interested as [respondent-mother] in actually visiting . . . the child," and that he required direction at visits to engage with LBAL.

The trial court also found that respondents continued to lack the ability to appropriately parent and were unable to provide permanency and stability for the child. The caseworker and CPS specialist opined that respondents did not demonstrate any current benefit from the services offered in the previous termination proceedings. See *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012) (holding that respondents must participate in their service plan but also "demonstrate that they sufficiently benefited from the services provided"). For example, they missed 10 of the 17 scheduled parenting time sessions and did not take advantage of additional parenting time opportunities through video chat. Moreover, during a home visit, the caseworker discovered that respondent-father's brother lived with the family despite testimony from some of the children in the previous termination proceedings that he sexually abused them. Additionally, the caseworker opined that respondent-mother's mental health issues and cognitive deficiencies impeded her ability to parent, and respondent-mother did not submit proof that she was actively addressing those issues or regularly attending counseling. LBAL's caregiver was previously assigned to respondent-mother through Community Mental Health as her caregiver for one year in 2022, and the caregiver testified that she was concerned for LBAL's safety in respondent-mother's care because respondent-mother's mental health issues prevented her from appropriately caring for LBAL. The caregiver also testified that respondent-mother only occasionally asked about the child.

Concerning housing, despite reporting that they moved into a four-bedroom home outfitted with the necessary supplies and furniture for LBAL and despite several requests from the caseworker to view the home, respondents did not schedule a home assessment and did not provide proof of a lease. Regarding financial stability, respondent-mother did not report income, but she received monthly supplemental security income payments and food stamps. She claimed that she worked with respondent-father performing demolition and painting work but maintained that she would be the child's full-time caregiver. Although respondent-father testified that he earned between $500 and $600 weekly from home demolition and cleaning work, the caseworker verified that his actual income was "only a few hundred dollars" every six months. Moreover, respondents provided little support for the child outside of items received at a baby shower, some clothes purchased after LBAL's birth, and diapers and toys that respondents brought to one parenting time session.

Turning to the benefits of LBAL's preadoptive foster placement, the trial court found that LBAL's fictive kin caregiver provided the child with appropriate housing, financial stability, and

emotional support. LBAL had been placed with the caregiver since 2023 shortly after she was born. At the time of termination, LBAL was bonded with the caregiver, relied on her for care, and, according to the caseworker, the caregiver was "the only parental figure [LBAL] has had in her life to date." The caregiver and LBAL participated in infant support services together. The caseworker testified that LBAL was "always happy" in her caregiver's care and that LBAL was meeting the appropriate developmental milestones. The caregiver was willing to adopt LBAL.

Although there was no evidence that respondents directly harmed LBAL as she was removed from respondents' custody shortly after she was born, the trial court did not clearly err by finding that respondents' "parental fitness ha[d] not improved." This Court has recognized that "[t]he doctrine of anticipatory neglect provides that how a parent treats one child is probative of how that parent may treat other children." *In re Mota*, 334 Mich App 300, 323; 964 NW2d 881 (2020). The prior terminations of respondents' parental rights to their other six children, in the aftermath of the sexual abuse of two of the children by a half-sibling and another relative in their home, as well as respondents' continuing lack of benefit from services, demonstrated that LBAL was at risk of harm if returned to their care.[2]

Accordingly, the trial court did not clearly err in finding that termination was in the child's best interests.

Affirmed.

/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado
/s/ Daniel S. Korobkin

---

[2] Respondents do not challenge the trial court's findings regarding the statutory grounds supporting termination. Therefore, we may assume that the trial court did not clearly err by making those findings. See *In re JS & SM*, 231 Mich App 92, 98-99; 585 NW2d 326 (1999), overruled in part on other grounds by *In re Trejo*, 462 Mich 341, 353; 612 NW2d 407 (2000). Regardless, having reviewed the record, we also conclude that the trial court did not clearly err by finding that one or more of the alleged statutory grounds was supported by clear and convincing evidence. See *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012).